POLSINELLI PC
Brett D. Anders
Jason A. Nagi
600 Third Avenue, 42nd Floor
New York, New York 10016
banders@polsinelli.com
jnagi@polsinelli.com
(212) 644-2092

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| WELLS FARGO BANK, NATIONAL ASSOCIATION, AS TRUSTEE, ON BEHALF OF THE REGISTERED HOLDERS OF CSAIL 2017-CX9 COMMERCIAL MORTGAGE TRUST, COMMERCIAL MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2017-CX9 and WILMINGTON TRUST, NATIONAL ASSOCIATION, AS TRUSTEE, ON BEHALF OF THE REGISTERED HOLDERS OF CSAIL 2017-C8 COMMERCIAL MORTGAGE TRUST, COMMERCIAL MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2017-C8, | | Case No.: _____ |
| | Plaintiffs, | **VERIFIED COMPLAINT** |
| -against- | | |
| ACROPOLIS GARDENS REALTY CORP., a New York corporation; ACROPOLIS ASSOCIATES LLC, a New York limited liability company; THE ACROPOLIS GARDENS CONDOMINIUM, BOARD OF MANAGERS; PEOPLE OF THE STATE OF NEW YORK, ALBANY, NEW YORK; THE CITY OF NEW YORK; THE CITY OF NEW YORK ENVIRONMENTAL CONTROL BOARD; BUILDING SERVICE 32BJ HEALTH FUND; BUILDING SERVICE 32BJ LEGAL SERVICES; BUILDING SERVICE 32BJ THOMAS SHORTMAN; and JOHN DOES I THROUGH XXXX, | | |
| | Defendants. | |

Plaintiffs Wells Fargo Bank, National Association, as Trustee, on behalf of the registered holders of CSAIL 2017-CX9 Commercial Mortgage Trust, Commercial Mortgage Pass-Through Certificates, Series 2017-CX9 ("**A1 Noteholder**"), and Wilmington Trust, National Association, as trustee, on behalf of the registered Holders of CSAIL 2017-C8 Commercial Mortgage Trust, Commercial Mortgage Pass-Through Certificates, Series 2017-C8 ("**A2 Noteholder**" and collectively with A1 Noteholder, the "**Plaintiffs**"), by and through their attorneys, for their Complaint state as follows against Defendants Acropolis Gardens Realty Corp.; Acropolis Associates LLC; The Acropolis Gardens Condominium, Board of Managers; the People of the State of New York, Albany, New York; the City of New York; the City of New York Environmental Control Board; Building Service 32 BJ Health Fund; Building Service 32BJ Legal Services; Building Service 32BJ Thomas Shortman; and John Does I through XXXX (collectively, the "**Defendants**"):

### *The Parties*

1.      A1 Noteholder is a securitized trust, the Trustee of which is Wells Fargo Bank, National Association, and is the holder and owner of certain loan documents, including, without limitation, the A1 Note (as defined below), that are the subject of this litigation and that encumber certain real estate and collateral located in Queens County, New York that is the subject of this mortgage foreclosure action.

2.      For the purposes of diversity jurisdiction, A1 Noteholder is a citizen of the State of South Dakota because its Trustee, Wells Fargo Bank, National Association, resides in the State of South Dakota.

3.      A2 Noteholder is a securitized trust, the Trustee of which is Wilmington Trust, National Association, and is the holder of the A2 Note (as defined below).

2

4.     For the purposes of diversity jurisdiction, A2 Noteholder is a citizen of the State of Delaware because its Trustee, Wilmington Trust, National Association, resides in the State of Delaware.

5.     Defendant Acropolis Gardens Realty Corp. ("**Borrower**") is a corporation organized and existing under the laws of the State of New York, and is thus a citizen of the State of New York.

6.     Defendant Acropolis Associates LLC ("**Acropolis Associates**") is a limited liability company organized and existing under the laws of the State of New York, and is thus a citizen of the State of New York.  Acropolis Associates is named herein in connection with a subordinate mortgage held by Acropolis Associates that encumbers the property that is the subject of this mortgage foreclosure action.  Acropolis Associates is also a minority shareholder in Borrower and the plaintiff in numerous lawsuits filed against Borrower, as further detailed below.

7.     Defendant The Acropolis Gardens Condominium, Board of Managers (the "**Condominium**") was formed pursuant to Article 9B of the Real Property Laws and pursuant to a certain Declaration of the Acropolis Gardens Condominium (the "**Declaration**") dated March 18, 1988 and recorded with the Queens County Clerk on July 22, 1988.  For diversity purposes, the Condominium is a citizen of the State of New York.

8.     Defendant the People of the State of New York, Albany New York ("**New York State**") has its principal place of business at 1 Commerce Plaza, 99 Washington Avenue, Albany New York 12231.  New York State is a citizen of the State of New York and is named as a party defendant herein based upon the possible existence of unpaid franchise taxes.

9.     Defendant The City of New York ("**NYC**") has its principal place of business in the City of New York and can be served with process at the Office of the Corporation Counsel, 100 Church Street, New York, New York.  NYC is a citizen of the State of New York and is named as a party defendant herein based upon possible unpaid City Business taxes.

10.     Defendant New York City Environmental Control Board ("**ECB**") has its principal place of business at 233 Schermerhorn Street, 11th Floor, Brooklyn, New York 11201. ECB is a citizen of the State of New York and is named as a party defendant herein based upon the possible existence of liens, judgments, encumbrances, *lis pendens* or other filings against the property that is the subject of this mortgage foreclosure action, as set forth in **Exhibit A**.

11.     Defendants Building Service 32BJ Health Fund, Building Service 32BJ Legal Services and Building Service 32BJ Thomas Shortman (collectively, "**Building Services**") have their principal place of business at 25 W. 18th Street, New York, New York.  Building Services are citizens of the State of New York and are named as defendants herein based upon the existence of a judgment filed against the property that is the subject of this mortgage foreclosure action (the "**Judgment**").

12.     Defendants John Does I through XXXX are currently unknown to Plaintiffs, but, on information and belief, are tenants, occupants, persons or corporations, if any, having or claiming an interest in or lien upon the premises described in the Complaint.

### *Jurisdiction and Venue*

13.     Pursuant to 28 U.S.C. § 1332, this Court has subject matter jurisdiction because the parties are citizens of different states and the amount in controversy exceeds the sum of $75,000.00.

14.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(1) and (2).

64671266.5

*Introduction*

15.     This mortgage foreclosure action relates to a condominium project located in Queens County, New York, that consists of two units – a residential unit made up of 618 cooperative apartments (the "**Residential Unit**"), which comprises 98% of the condominium project, and a commercial unit made up of several retail spaces (the "**Commercial Unit**"), which comprises 2% of the condominium project.  The Borrower's principal asset is the Residential Unit.  The 618 cooperative apartments that comprise the Residential Unit are located in 16 separate buildings.  Shareholders of Borrower own shares of cooperative stock in Borrower and are parties to proprietary leases with Borrower which both give the shareholders ownership interests in Borrower and also grant them certain rights in and to certain apartments in the Residential Unit.  Each month, the shareholders of Borrower pay monthly maintenance charges directly to Borrower, which are assessments on shareholders based on the number of shares owned and also based on the number and type of units leased by each shareholder.  Borrower in turn pays the costs and expenses associated with owning and maintaining the Residential Unit, including loan payments owed to Plaintiffs, together with certain amounts due and owing to the Condominium pursuant to the Declaration  (referred to in the Declaration as the "**Common Charges**").

*The Loan Transaction*

16.     On April 24, 2017, Borrower entered into a $45,000,000 loan transaction (the "**Loan**") with Natixis Real Estate Capital LLC ("**Original Lender**").  The terms and conditions of the Loan are set forth in that certain Loan Agreement (the "**Loan Agreement**")[1] dated as of

---

[1] Unless otherwise defined herein, all defined terms shall be given the same meaning as set forth in the Loan Agreement.

April 24, 2017 by and between Borrower and Original Lender.  A true and correct copy of the Loan Agreement is attached hereto as **Exhibit B**.

17.     The Loan was originally evidenced by that certain Amended, Restated and Consolidated Promissory Note (the "**Original Note**") in the original principal amount of $45,000,000 and dated April 24, 2017, the maker of which is Borrower.  A true and correct copy of the Original Note is attached hereto as **Exhibit C**.

18.     The indebtedness owed in connection with the Loan is secured by that certain Amended, Restated and Consolidated Mortgage, Assignment of Leases and Rents and Security Agreement (the "**Mortgage**"), which Mortgage encumbers the Residential Unit together with certain other real and personal property further described in the Mortgage and located at the following addresses, all of which are in Astoria, New York: 21-05 33rd Street, 21-15 33rd Street, 21-27 33rd Street, 21-37 33rd Street, 21-47 33rd Street, 21-57 33rd Street, 21-67 33rd Street, 21-77 33rd Street, 21-06 35th Street, 21-16 35th Street, 21-28 35th Street, 21-38 35th Street, 21-48 35th Street, 21-58 35th Street, 21-68 35th Street, and 21-78 35th Street (collectively, the "**Property**"). A true and correct copy of the Mortgage, as recorded, is attached hereto as **Exhibit D**.

19.     The Mortgage was duly recorded in the Office of the City Register of the City of New York, Queens County (the "**Register**"), on April 26, 2017 as CRFN 2017000159582.  The UCC Financing Statement (the "**Financing Statement**") perfecting Original Lender's lien on the personal property and fixtures that is included as part of the Property was recorded with the Register on April 26, 2017 as CRFN 2017000159584.  A true and correct copy of the Financing Statement is attached hereto as **Exhibit E**.

20.     In connection with the execution of the Mortgage, Acropolis Associates and Original Lender entered into that certain Subordination and Standstill Agreement (the

"**Subordination Agreement**"), pursuant to which Acropolis Associates agreed that all of its rights and remedies under that certain Wraparound Mortgage (and Assignment of Leases and Rents and Security Agreement) made by Borrower for the benefit of Acropolis Associates and recorded with the Register on May 9, 1990, in Reel 2993, Page 2231 (as later amended and modified, the "**Wraparound Mortgage**") would be subordinate in all respects to the Loan and to all rights and remedies of Original Lender and its assigns under the Loan Documents (as defined below) and in and to the Property.  A true and correct copy of the Subordination Agreement is attached hereto as **Exhibit F**.

21.     The Subordination Agreement was duly recorded with the Register, on April 26, 2017, as CRFN 2017000159586 (Ex. F.)

22.     Also in connection with the Loan, Borrower executed that certain Assignment of Leases and Rents (the "**ALR**"), pursuant to which Borrower absolutely and unconditionally assigned to Original Lender all right, title and interest of Borrower in and to all leases and other agreements or arrangements affecting the use, enjoyment or occupancy of the Property (collectively, the "**Leases**") and all rents, rent equivalents, moneys payable as damages or in lieu of rent or rent equivalents, royalties, income, fees, receivables, receipts, revenues, deposits, accounts, cash, issues, profits, charges for services rendered, and other payments received by or paid to or for the account of or benefit of Borrower arising from or attributable to the Property (collectively, the "**Rents**").  A true and correct copy of the ALR, as recorded, is attached hereto as **Exhibit G**.

23.     The ALR was duly recorded with the Register on April 26, 2017, as CRFN 2017000159583 (Ex. G.)

64671266.5

24.     Also, as additional security for the Loan, Borrower executed that certain Assignment and Subordination of Management Agreement (the "**Management Agreement Assignment**"), pursuant to which Borrower conditionally transferred, set over and assigned to Lender all of Borrower's right and interest in that certain Management Agreement dated December 1, 2009 by and between Borrower and Metropolitan Pacific Properties, Inc. ("**Manager**").  A true and correct copy of the Management Agreement Assignment is attached hereto as **Exhibit H**.

25.     Following the origination of the Loan, Borrower and Original Lender entered into that certain Note Splitter Agreement, dated as of June 15, 2017 (the "**Note Splitter Agreement**"), pursuant to which Borrower and Original Lender agreed that the debt evidenced by the Original Note and owed in connection with the Loan would be split and severed into two separate promissory notes.  In connection with the Note Splitter Agreement, Borrower then signed and delivered to Original Lender the following: (a) a certain Promissory Note A1, dated June 15, 2017, evidencing Borrower's obligation to pay the principal amount of $25,000,000.00 (the "**A1 Note**"); and (b) a certain Promissory Note A2, dated June 15, 2017, evidencing Borrower's obligation to pay the principal amount of $20,000,000.00 (the "**A2 Note**").  A true and correct copy of the Note Splitter Agreement is attached hereto as **Exhibit I**.  A true and correct copy of the A1 Note is attached hereto as **Exhibit J**.  A true and correct copy of the A2 Note is attached hereto as **Exhibit K**.

26.     Thereafter, Original Lender assigned to A1 Noteholder all of its right, title and interest in the A1 Note, the Mortgage, the Financing Statement, the Subordination Agreement, the ALR, the Management Agreement Assignment and all other documents executed in

8

connection with the Loan or securing the amounts owed under the A1 Note and A2 Note (collectively, the "**Loan Documents**"), as evidenced by the following:

a.     that certain Assignment of Mortgage (the "**Mortgage Assignment**"), dated September 29, 2017 and recorded with the Register on November 3, 2017 as CRFN 2017000408244, a true and correct copy of which is attached hereto as **Exhibit L,** pursuant to which Original Lender assigned to A1 Noteholder all of Original Lender's right, title and interest in the Mortgage;

b.     that certain Assignment of Assignment of Leases and Rents (the "**ALR Assignment**"), dated September 29, 2017 and recorded with the Register on November 3, 2017 as CRFN 2017000408245, a copy of which is attached hereto as **Exhibit M**, pursuant to which Original Lender assigned to A1 Noteholder all of Original Lender's right, title and interest in the ALR;

c.     that certain Assignment of the Financing Statement (the "**UCC Assignment**"), dated September 29, 2017 and recorded with the Register on November 3, 2017 as CRFN 2017000408246, a copy of which is attached hereto as **Exhibit N**, pursuant to which Original Lender assigned to A1 Noteholder all of Original Lender's right, title and interest in the Financing Statement; and

d.     that certain Allonge, making the A1 Note payable to A1 Noteholder (the "**A1 Note Allonge**")**,** a true and correct copy of which is attached to the A1 Note as part of Exhibit J.

27.     Original Lender also assigned its right, title and interest in the A2 Note to the A2 Noteholder as evidenced by that certain Allonge, making the A2 Note payable to the A2

Noteholder (the "**A2 Note Allonge**"). A true and correct copy of the A2 Note Allonge is attached to the A2 Note as part of Exhibit K.

28. Prior to the commencement of this action, (i) A1 Noteholder has been in exclusive possession of the original A1 Note, endorsed to A1 Noteholder, and has not transferred the same to any other person or entity, and (ii) A2 Noteholder has been in exclusive possession of the original A2 Note, endorsed to A2 Noteholder, and has not transferred the same to any other person or entity.

### *Borrower's Obligations Under the Loan Documents*

29. The Loan Agreement provides, among other things:

a. Borrower shall make monthly payments of principal and interest and other amounts (Section 2.2);

b. Borrower shall perform and complete each item of the repairs and environmental remedial work at the Property described on Schedule 2 to the Loan Agreement (referred to as the "**Required Repairs**") within 12 months from the date of the Loan Agreement (i.e. April 24, 2018) (Section 3.2);

c. Borrower shall make monthly payments equal to one-twelfth of the estimated amount for payment of taxes and insurance for the Property (Section 3.3);

d. Borrower shall make monthly payments into the Capital Reserve Subaccount in an initial amount equal to $13,596 per month, as may reasonably be adjusted by A1 Noteholder (Section 3.4);

e. Borrower shall make monthly payments into the Common Charge Subaccount in an amount equal to the Common Charges that will be payable for the month in which such Payment Date occurs, provided that Borrower shall not be obligated to make payments into the

Common Charge Subaccount so long as Borrower provides A1 Noteholder with evidence that Borrower has paid all Common Charges directly to the Condominium at least 30 days prior to the due date of such Common Charges (Section 3.12);

f.      Borrower shall at all times cause the Property to be maintained in a good and safe condition and shall promptly comply with all Legal Requirements and immediately properly cure any violation of a Legal Requirement (Section 5.3.1);

g.      Borrower shall give prompt written notice to A1 Noteholder of any litigation pending or threatened against Borrower which might materially adversely affect Borrower's condition or business or the Property (Section 6.2);

h.      Borrower shall submit to A1 Noteholder annually within 90 days after each calendar year an audited annual financial statement (Section 6.3.2);

i.      Borrower shall submit to A1 Noteholder within 20 days after the end of each calendar month or quarter, as applicable, (1) monthly and year-to-date operating statements, (2) a quarterly balance sheet, (3) a quarterly comparison of the budgeted income and expenses and the actual income and expenses for each quarter and year-to-date for the Property, (4) a quarterly statement of the actual Capital Expenses made by Borrower during each calendar quarter, (5) a quarterly statement that Borrower has not incurred any indebtedness other than the indebtedness incurred in connection with the Loan, and (6) a quarterly aged receivables report (Section 6.3.3); and

j.      Borrower shall also furnish to A1 Noteholder, within 10 Business Days after request, such further detailed information with respect to the operation of the Property and the financial affairs of Borrower or Manager as may be reasonably requested by Borrower (Section 6.3.4).

11

*__Borrower's Failure to Comply with Obligations Under Loan Documents__*

30.     Borrower failed to provide Lender with evidence that Borrower had timely paid all Common Charges to the Condominium at least 30 days prior to the date the Common Charges were due.  As a result, on June 12, 2018, A1 Noteholder provided notice to Borrower that A1 Noteholder would require Borrower to commence making monthly payments into the Common Charge Subaccount in accordance with Section 3.12 of the Loan Agreement.  A true and correct copy of the notice delivered by counsel for A1 Noteholder is attached hereto as **Exhibit O**.

31.     In response, on June 21, 2018, Borrower provided A1 Noteholder with a letter from the Condominium stating that Borrower was current on all Common Charges as of the date of the letter.  Borrower provided no other information with respect to the amount of the Common Charges or a budget to reflect future amounts that would come due.  A true and correct copy of Borrower's response is attached hereto as **Exhibit P**.

32.     Notwithstanding Borrower's response, Borrower still had not complied with the terms of the Loan Agreement.  In particular, Section 3.12 of the Loan Agreement requires Borrower to provide evidence of payment of the Common Charges on a monthly basis and at least 30 days prior to the date of payment.  Borrower made no effort to provide A1 Noteholder with additional information on the monthly payments.  Accordingly, on June 28, 2018, A1 Noteholder made further demand on Borrower to provide evidence of payment of all Common Charges and requested Borrower to include all invoices and wire confirmations or cancelled checks with respect to each payment at least 30 days prior to their respective due dates as required by the Loan Agreement.  A true and correct copy of the additional correspondence by counsel for A1 Noteholder is attached hereto as **Exhibit Q**.

33.     Borrower failed to provide A1 Noteholder with the requested information. Instead, on or about July 12, 2018, counsel for Borrower contacted counsel for A1 Noteholder to notify A1 Noteholder of litigation that had been filed against the Borrower.  Borrower further requested that A1 Noteholder agree to release certain reserve funds being held in connection with the Loan.  According to Borrower, reserve funds were needed to pay for fees and costs, including attorneys' fees, incurred by Borrower in connection with ongoing litigation.  A true and correct copy of a letter from Borrower to A1 Noteholder requesting the release of reserve funds to pay litigation fees and costs is attached hereto as **Exhibit R**.

34.     Upon learning that the Borrower was involved in ongoing litigation, A1 Noteholder conducted a search to discover that the Borrower was a defendant in numerous lawsuits (collectively, the "**Lawsuits**"), none of which had previously been disclosed to A1 Noteholder in violation of the Loan Agreement.  The Lawsuits include, without limitation, the following:

a)     *Astoria Atlas Holdings, LLC, et al. v. Acropolis Gardens Realty Corp., et al.*, pending in the Supreme Court of the State of New York, County of Queens, Index No. 708113/2017;

b)     *Calix Realty Holdings v. Acropolis Gardens Realty Corp.*, pending in the Supreme Court of the State of New York, County of Queens, Index No. 715877/2017;

c)     *Davila & Greye v. Olympia Haven Realty Corp., et al*., pending in the Supreme Court of the State of New York, County of Queens, Index No. 153257/2017;

d)     *Acropolis Associates, LLC v. Acropolis Gardens Realty Corp*., pending in the Supreme Court of the State of New York, County of Queens, Index No. 709221/2018; and

e)      *Astoria Atlas Holdings, LLC, et al. v. Acropolis Gardens Realty Corp., et al.*, pending in the Supreme Court of the State of New York, County of Queens, Index No. 708932/2018 (the "**Derivative Lawsuit**").

35.      The Derivative Lawsuit was filed by Acropolis Associates, the holder of the Wraparound Mortgage, together with three other limited liability companies, all of which lease units in the Residential Unit at the Property and are shareholders in Borrower (collectively, the "**Minority Shareholders**").   The Minority Shareholders make numerous allegations of mismanagement and misappropriation by Manager and other individuals acting on behalf of Borrower.  Said allegations include the following:

a)      certain parties in control of Borrower have caused the Borrower to unequally assess its monthly maintenance charges among the shareholders resulting in improper and unfair assessments;

b)      certain parties in control of Borrower have caused more than $6 million to be improperly transferred and misappropriated from Borrower to Manager over the course of the last seven years;

c)      certain parties in control of Borrower have comingled and misappropriated funds of the Borrower with other funds related to projects not involving Borrower but benefiting the shareholders controlling Borrower;

d)      certain parties in control of Borrower have caused thousands of dollars to be improperly transferred from Borrower to third parties related to or controlled by the shareholders controlling Borrower; and

e)       Borrower has failed to properly maintain certain common areas at the Property, resulting in numerous outstanding violations for hazardous conditions related to the exterior façade, fire escapes, gas piping installation, boiler and electrical wiring.

36.       Immediately after learning of the Lawsuits, A1 Noteholder received notice that the payment made by the Borrower for amounts due and owing in connection with the Loan for July 2018 had been returned for insufficient funds.  On July 13, 2018, A1 Noteholder sent notice to Borrower that an Event of Default had occurred in connection with the Loan due to Borrower's failure to make timely payments thereunder.  A1 Noteholder further rejected, as improper under the Loan Agreement, Borrower's request that reserve funds be released to pay Borrower's fees and costs incurred in connection with the Lawsuits.  Finally, A1 Noteholder also provided notice to Borrower of other breaches under the Loan Agreement, including the following: the failure of Borrower to provide all documents related to the Condominium; the failure of the Borrower to provide evidence of payment of Common Charges; and the failure of Borrower to submit evidence that Borrower had properly completed the Required Repairs within 12 months from the date of the Loan Agreement.  A true and correct copy of the July 13, 2018 default letter is attached hereto as **Exhibit S**.

37.       A1 Noteholder also ordered an updated title search with respect to the Property. That title search revealed the following: (i) Building Services had obtained a judgment against Borrower; (ii) numerous violations related to the Property remained open; and (iii) annual frontage fees in an amount exceeding $450,000 were as of the date of the title search past due and encumbering the Property.

38.       On July 26, 2018, counsel for A1 Noteholder thereafter made demand on Borrower to provide updated financial information regarding the following:  (i) Borrower's

operating statements and other financial data; (ii) the Condominium budget and payment of Common Charges; and (iii) the condition of the Property and status of repairs thereto.  A true and correct copy of the letter from counsel for A1 Noteholder to Borrower is attached hereto as **Exhibit T**.

39.    Borrower has failed to provide A1 Noteholder with the requested information. Borrower thereafter also failed to pay the amounts due and owing in connection with the Loan for the month of August 2018.  As a result, A1 Noteholder sent another notice to Borrower regarding the occurrence of an additional Event of Default under the Loan Documents.  A true and correct copy of the August 8, 2018 default notice is attached hereto as **Exhibit U**.

40.    Borrower failed to cure the existing defaults under the Loan Documents.  As a result, on August 17, 2018, A1 Noteholder, on behalf of itself and on behalf of A2 Noteholder, sent notice to Borrower that Plaintiffs had elected to accelerate the indebtedness owed under both the A1 Note and the A2 Note (collectively, the "**Notes**").  A true and correct copy of the acceleration letter is attached hereto as **Exhibit V**.

41.    Borrower has failed to cure the defaults and remains in default under the Notes and Loan Documents.

### _Amounts Due Under the Loan Documents_

42.    As of August 6, 2018, the following amounts are due and owing under the Loan Documents:

    a.   Unpaid principal under the A1 Note in the amount of $25,000,000.00;

    b.   Interest accrued on the A1 Note from June 6, 2018 through August 6, 2018 (62 days) at 3.72% ($2,583.33 per diem) in the amount of $160,166.67, together with all interest accruing thereafter;

c.  Unpaid principal under the A2 Note in the amount of $20,000,000.00;

d.  Interest accrued on the A2 Note from July 5, 2018 through August 6, 2018 (32 days) at 3.72% ($2,066.67 per diem) in the amount of $66,133.33, together with all interest accruing thereafter;

e.  Default interest accrued on the A1 Note from July 6, 2018 through August 6, 2018 (31 days) at 5% ($3,472.22 per diem) in the amount of $107,638.89, together with all default interest accruing thereafter;

f.  Default interest accrued on the A2 Note from July 6, 2018 through August 6, 2018 (31 days) at 5% ($2,777.78 per diem) in the amount of $86,111.11, together with all default interest accruing thereafter;

g.  Yield maintenance owed under the A1 Note in the amount of $1,540,413.85;

h.  Yield maintenance owed under the A2 Note in the amount of $1,232,331.08;

i.  Interest on advances in the amount of $171.84;

j.  Late charges on the A1 Note in the amount of $13,544.58;

k.  Late charges on the A2 Note in the amount of $3,100.00

l.  Any and all fees and costs incurred by Plaintiffs, both to date and hereafter, in connection with the collection of the amounts due and owing under the Loan Documents and for the protection, preservation and realization of the Property, including processing fees, late charges, inspection fees, expenses, administrative fees, attorneys' fees, and costs incurred in connection with the issuance of the third-party reports in connection with the Property; and

m.  Any other amounts due and owing under the Loan Documents.

### *Right to Possession and Rents*

43.     Under Section 10(a)(viii) of the Mortgage, while any Event of Default remains uncured, Plaintiffs are entitled to enforce their interest in the Leases and Rents and enter into or upon the Property … and dispossess Borrower and its agents and employees therefrom, and [Plaintiffs] may … exercise all rights and powers of Borrower with respect to the Property … including the right to make, cancel, enforce or modify Leases, obtain and evict tenants, and demand, sue for, collect and receive Rents …"

44.     Accordingly, as a result of Borrower's default under the Loan Documents, Plaintiffs are entitled to an order directing all rents, issues and profits from the Property be remitted to Plaintiffs in accordance with the terms of the Mortgage and other Loan Documents and directing that any such amounts be used to reduce the indebtedness described above.

### *Right to Foreclosure*

45.     Under the Mortgage, upon an event of default, Plaintiffs have the right to institute a proceeding for foreclosure.  Thus, Plaintiffs are entitled to an Order from the Court that the Mortgage be foreclosed, that the liens provided therein be declared as first and prior liens on the Property, and that Plaintiffs be granted immediate possession of the Property.

46.     No other action has been brought to recover any part of the debt under the Mortgage, Notes, or other Loan Documents.

47.     The Defendants Acropolis Associates, the Condominium, New York State, NYC, ECB, Building Services and John Doe Nos. I to XXXX have or may claim to have some interest in, or lien upon, the Property or some part thereof, which interest or lien, if any, has accrued subsequent to the lien of the Mortgage and/or is subject and subordinate thereto; as such, Defendants Acropolis Associates, the Condominium, New York State, NYC, ECB, Building

Services and John Doe Nos. I to XXXX should assert whatever interest they have or may claim to have in the Property.

48. Plaintiffs may not be deemed to have waived, altered, released, or changed its election to foreclose by reason of any payment made after the date of commencement of this action of any and all of the defaults identified herein.

49. Plaintiffs specifically reserve the right to pursue a temporary injunction, appointment of receiver, or other relief with respect to its rights under the Loan Documents. Pursuant to N.Y. Real Prop. Acts. Law §1371, Plaintiffs may move the Court to enter final judgment against Borrower for any residue of the debt under the Notes remaining unsatisfied after the foreclosure sale of the Property is completed.

WHEREFORE, Plaintiffs respectfully request that the Court enter judgment in favor of Plaintiffs for foreclosure of the Property as follows:

A. Finding that Plaintiffs have a first and best lien on the Property;

B. Ordering that Plaintiffs have the legal right and are authorized to foreclose on the Property:

(i) in separate parcels or in a single parcel, whichever will maximize the value of the Property, according to law, together with the fixtures upon the premises and further together with all personal property, both tangible and intangible, securing the obligations owed under the Loan Documents;

(ii) subject to zoning restrictions and ordinances adopted by any municipality or other governmental authority, and violations thereof;

(iii) subject to any state of facts that an accurate survey would show;

(iv) subject to covenants and restrictions of record, if any; and

19

(v)     subject to violations, if any, noted by any federal, state, city, town or village agency having authority over the premises;

C.     Finding that such foreclosure will vest in the purchaser thereat free and clear title to the Property, free of any and all interests that are or might be asserted by the Defendants to this Complaint;

D.     Ordering that Plaintiffs have the right to credit bid at such foreclosure sale any and all amounts due to Plaintiffs under the Notes and other Loan Documents;

E.     Ordering and directing that the United States Marshall, the Sheriff of Queens County, New York, or any referee appointed in this action, foreclose the Property and deliver title via a Marshall's Deed, Sheriff's Deed or Referee's Deed, and bill of sale, as appropriate, to the successful bidder at such foreclosure;

F.     Ordering and directing that the proceeds of the sale be applied as follows:

(i)     to payment of the expenses of the sale;

(ii)     to the payment of the debt owed to Plaintiffs under the Notes and other Loan Documents;

(iii)     to the payment of foreclosure costs and other accrued costs in connection with the foreclosure;

(iv)     to the payment, at Plaintiffs' option, of any real property taxes that may be due and unpaid in connection with the Property;

(v)     to the payment, at Plaintiffs' option, of all other assessments against or attributable to the Property; and

(vi)    the surplus, if any, to the payment of debts secured by junior liens on the Property and then, to Borrower, in accordance with further order of the Court;

G.    Ordering that Borrower has no right of redemption or reinstatement with respect to the Property;

H.    Finding that Plaintiffs have preserved their right to pursue any deficiency that may exist under the Notes and other Loan Documents after application of the proceeds of the foreclosure sale pursuant to N.Y. Real Prop. Acts. Law §1371; and

I.    Ordering all further relief that is just, proper, and equitable.


Dated:  New York, New York
         October 1, 2018

                              POLSINELLI PC

                              By:    */s/ Jason A. Nagi*
                                     BRETT D. ANDERS
                                     JASON A. NAGI
                                     600 Third Avenue, 42nd Floor
                                     New York, NY 10016
                                     jnagi@polsinelli.com
                                     (212) 644-2092

                              ATTORNEYS FOR PLAINTIFFS

64671266.5

STATE OF FLORIDA

COUNTY OF MIAMI-DADE

Danny Ornstein, being duly sworn, says that he is an asset manager of Rialto Capital Advisors, LLC, the authorized agent for Plaintiffs Wells Fargo Bank, National Association, as Trustee for the registered holders of CSAIL 2017-CX9 Commercial Mortgage Trust, Commercial Mortgage Pass-Through Certificates, Series 2017-CX9, and Wilmington Trust, National Association, as trustee for the registered Holders of CSAIL 2017-C8 Commercial Mortgage Trust, Commercial Mortgage Pass-Through Certificates, Series 2017-C8, that he has read the foregoing verified complaint and said verified complaint is true to his own knowledge except as to matters therein stated to be alleged on information and belief and that as to those matters he believes them to be true.

_____

Danny Ornstein

Sworn to before me this
___ day of September, 2018

_____

Notary Public

MONICA CABRERA
MY COMMISSION # GG 001492
EXPIRES: June 13, 2020
Bonded Thru Budget Notary Services

64671266.4