# Exhibit D



**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.

2017042500505003004E9504

| RECORDING AND ENDORSEMENT COVER PAGE | | PAGE 1 OF 28 |
|---|---|---|
| **Document ID: 2017042500505003** | Document Date: 04-21-2017 | Preparation Date: 04-26-2017 |

Document Type: AGREEMENT
Document Page Count: 26

| PRESENTER: | RETURN TO: |
|---|---|
| TITLEWORKS ABSTRACT, INC.<br>18 FAIRVIEW STREET<br>17-TWA-73389-Q<br>HUNTINGTON, NY 11743<br>631-549-7300<br>RECORDING@TITLEWORKSABSTRACT.COM | WINSTON & STRAWN LLP ATTN: COREY A.<br>TESSLER ESQ.<br>200 PARK AVENUE<br>17-TWA-73389-Q<br>NEW YORK, NY 10166 |

### PROPERTY DATA

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| QUEENS | 830 | 1002 | Entire Lot RES | 21-68 35TH STREET |

Property Type: COMMERCIAL CONDO UNIT(S)

### CROSS REFERENCE DATA

CRFN: 2013000323361
☒ Additional Cross References on Continuation Page

### PARTIES

| PARTY 1: | PARTY 2: |
|---|---|
| ACROPOLIS GARDENS REALTY CORP.<br>21-77 33RD STREET<br>ASTORIA, NY 11105 | NATIXIS REAL ESTATE CAPITAL LLC<br>1251 AVENUE OF THE AMERICAS<br>NEW YORK, NY 10020 |

### FEES AND TAXES

| Mortgage : | | | Filing Fee: | | |
|---|---|---|---|---|---|
| Mortgage Amount: | $ | 45,000,000.00 | | $ | 0.00 |
| Taxable Mortgage Amount: | $ | 0.00 | NYC Real Property Transfer Tax: | | |
| Exemption: | | 255 | | $ | 0.00 |
| TAXES: County (Basic): | $ | 0.00 | NYS Real Estate Transfer Tax: | | |
| City (Additional): | $ | 0.00 | | $ | 0.00 |
| Spec (Additional): | $ | 0.00 | | | |
| TASF: | $ | 0.00 | RECORDED OR FILED IN THE OFFICE | | |
| MTA: | $ | 0.00 | OF THE CITY REGISTER OF THE | | |
| NYCTA: | $ | 0.00 | CITY OF NEW YORK | | |
| Additional MRT: | $ | 0.00 | Recorded/Filed    04-26-2017 15:24 | | |
| TOTAL: | $ | 0.00 | City Register File No.(CRFN): | | |
| Recording Fee: | $ | 167.00 | **2017000159582** | | |
| Affidavit Fee: | $ | 8.00 | | | |

*City Register Official Signature*

**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**



2017042500505003003CA786

| RECORDING AND ENDORSEMENT COVER PAGE (CONTINUATION) | PAGE 2 OF 28 |
|---|---|

**Document ID: 2017042500505003**   Document Date: 04-21-2017   Preparation Date: 04-25-2017
Document Type: AGREEMENT

---

**CROSS REFERENCE DATA**
**CRFN:** 2014000255754
**CRFN:** 2017000020155
**Document ID:** 2017042500505002

THIS INSTRUMENT PREPARED BY
AND WHEN RECORDED RETURN TO:

Winston & Strawn LLP
200 Park Avenue
New York, NY 10166
Attn:  Corey A. Tessler, Esq.

*(SPACE ABOVE THIS LINE FOR RECORDER'S USE)*

ACROPOLIS GARDENS REALTY CORP.
(Mortgagor)

to

NATIXIS REAL ESTATE CAPITAL LLC
(Mortgagee)

**AMENDED, RESTATED AND CONSOLIDATED MORTGAGE, ASSIGNMENT OF
LEASES AND RENTS AND SECURITY AGREEMENT**

| | |
|---|---|
| Dated: | April 21, 2017 |
| Property Location: | 21-05 33rd St., 21-15 33rd St., 21-27 33rd St., 21-37 33rd St., 21-47 33rd St., 21-57 33rd St., 21-67 33rd St., 21-77 33rd St., 21-06 35th St., 21-16 35th St., 21-28 35th St., 21-38 35th St., 21-48 35th St., 21-58 35th St., 21-68 35th St. and 21-78 35th St., Queens, New York |
| County: | Queens |
| Block: | 830 |
| Lot: | 1002 |

## AMENDED, RESTATED AND CONSOLIDATED MORTGAGE, ASSIGNMENT OF LEASES AND RENTS AND SECURITY AGREEMENT

This **AMENDED, RESTATED AND CONSOLIDATED MORTGAGE, ASSIGNMENT OF LEASES AND RENTS AND SECURITY AGREEMENT** (this "*Security Instrument*"), made as of April 21, 2017, by **ACROPOLIS GARDENS REALTY CORP.**, a New York corporation (together with its permitted successors and assigns, "*Borrower*"), having an address at c/o Metropolitan Pacific Properties, Inc., 21-77 33rd Street, Astoria, NY 11105, as mortgagor, to **NATIXIS REAL ESTATE CAPITAL LLC**, a Delaware limited liability company, having an address at 1251 Avenue of the Americas, New York, New York 10020, as mortgagee (together with its successors and assigns, hereinafter referred to as "*Lender*").

A.          Borrower is the owner of that certain fee estate situated in the County of Queens, State of New York, more particularly described in Exhibit A attached hereto and made a part hereof.

B.          Lender is the present owner and holder of, and the Borrower is the current obligor under, those certain promissory notes (the "**Prior Notes**") described on <u>Schedule I</u> annexed hereto and made a part hereof in the aggregate unpaid principal amount of $36,000,000.00 (the "**Existing Indebtedness**").

C.          The Prior Notes are secured by those certain mortgages (the "**Prior Mortgages**") described on <u>Schedule II</u> annexed hereto and made a part hereof, encumbering the Property.

D.          On the date hereof, the Borrower has executed and delivered to Lender a certain gap promissory note (the "**Gap Note**"; the Gap Note, together with the Prior Notes, hereinafter collectively referred to as the "**Existing Notes**") evidencing indebtedness in the original principal amount of $9,000,000.00 (the "**New Indebtedness**"), and the Borrower has executed and delivered to Lender a certain Gap Mortgage and Security Agreement dated of even date herewith and to be duly recorded in the Office of the City Register of the City of New York, Queens County simultaneously herewith  (the "**Gap Mortgage**"; the Gap Mortgage, together with the Prior Mortgage, hereinafter collectively referred to as the "**Existing Mortgages**"), which, among other things, secures the New Indebtedness.

E.          On the date hereof, Borrower and Lender are amending, restating and consolidating the Existing Notes pursuant to a certain Amended, Restated and Consolidated Promissory Note (as the same may hereafter be amended, modified, consolidated, extended or replaced, the "**Note**") and sums under the Note will be evidenced and advanced in accordance with the Loan Agreement (hereinafter defined).

F.          Borrower and Lender desire to (1) combine, consolidate, amend and restate in its entirety the Existing Indebtedness and the New Indebtedness and all such indebtedness as so combined, consolidated, amended and restated shall constitute a single indebtedness in the aggregate original principal amount of FORTY-FIVE MILLION AND 00/100 DOLLARS ($45,000,000.00) (the "**Consolidated Indebtedness**"), all on the terms and conditions provided in the Note and the Loan Agreement, and (2) consolidate and coordinate the liens of the Existing

Mortgages to create a single, consolidated lien (the "**Consolidated Lien**") on the Property (hereinafter defined), which Consolidated Lien will be a valid first and prior lien upon the Property securing the Consolidated Indebtedness, and (3) amend and restate the terms and conditions contained in the Existing Mortgages as hereinafter set forth.

G.      Borrower and Lender intend these Recitals to be a material part of this Security Instrument.

H.      Borrower desires to secure the payment of the Consolidated Indebtedness and the performance of all of its obligations under the Note, the Loan Agreement and the other Loan Documents (as herein defined).

NOW, THEREFORE, in consideration of the property and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto covenant and agree as follows:

I.      This Security Instrument constitutes a mortgage and security agreement encumbering the Property upon the terms and conditions set forth herein to secure the Consolidated Indebtedness, it being understood and agreed that the Property secures the repayment of the entire Consolidated Indebtedness.

II.      The liens of the Existing Mortgages are hereby merged and consolidated without priority one over the other and to the same extent and as fully as if the Consolidated Indebtedness secured thereby has been originally advanced at the time of the making, execution, delivery and recordation of the Existing Mortgages, as if the Existing Mortgages at the time of their making, execution, delivery and recordation had been made to secure an indebtedness to Lender in the aggregate principal amount of the Consolidated Indebtedness and as such are hereby spread to encumber the Property.

III.      Borrower hereby represents and warrants that the Existing Indebtedness and the New Indebtedness as consolidated constitute a single indebtedness in the principal amount of the Consolidated Indebtedness as evidenced by the Note, and that the Existing Mortgages as hereby consolidated constitute a single valid first priority lien upon the Property fully securing the Consolidated Indebtedness, evidenced by the Note together with interest thereon as provided therein.

IV.      From and after the date hereof, the terms, covenants and provisions of the Existing Mortgages are hereby modified, consolidated, amended and restated in their entirety as provided herein, and the Existing Mortgages, as so modified, consolidated, amended and restated are hereby ratified and confirmed in all respects by Borrower.

V.      Neither this Security Instrument nor anything contained herein shall be construed as a substitution or novation of the Existing Indebtedness evidenced by the Existing Notes or of the Existing Mortgages, which shall remain in full force and effect, as hereby confirmed, modified, consolidated, restated and superseded.

**AND FURTHERMORE**, in consideration of the making of the Loan by Lender and the covenants, agreements, representations and warranties set forth in this Security Instrument:

AmericasActive:9023956.6

Borrower and Lender have entered into that certain Loan Agreement, dated as of the date hereof (as amended, modified, restated, consolidated, replaced or supplemented from time to time, the "**Loan Agreement**"), pursuant to which (and in conjunction with the Note and the Consolidated Lien) Lender is making a secured loan to Borrower in the aggregate original principal amount of $45,000,000.00 (the "**Loan**"). Capitalized terms used herein without definition are used as defined in the Loan Agreement. The Loan is evidenced by the Note. The Loan is the same indebtedness as the New Indebtedness—to wit, a single obligation of Borrower to Lender in the principal sum of $45,000,000.00, plus applicable interest and sums set forth in the Loan Documents.

To secure the payment of the Note and all sums which may or shall become due hereunder or under any of the other documents evidencing, securing or executed in connection with the Loan (the Note, this Security Instrument, the Loan Agreement and such other documents, as any of the same may, from time to time, be modified, amended, restated, replaced or supplemented, being hereinafter collectively referred to as the "**Loan Documents**"), including (i) the payment of interest and other amounts which would accrue and become due but for the filing of a petition in bankruptcy (whether or not a claim is allowed against Borrower for such interest or other amounts in any such bankruptcy proceeding) or the operation of the automatic stay under Section 362(a) of Title 11 of the United States Code (the "**Bankruptcy Code**"), and (ii) the costs and expenses of enforcing any provision of any Loan Document (all such sums being hereinafter collectively referred to as the "**Debt**"), Borrower hereby irrevocably mortgages, grants, bargains, sells, conveys, transfers, pledges, sets over and assigns, and grants a security interest, to and in favor of Lender, WITH POWER OF SALE, all of Borrower's right, title and interest in and to that certain condominium unit (collectively, the "**Unit**") more fully described on Exhibit A annexed hereto and incorporated herein by this reference of the condominium regime of The Acropolis Gardens Condominium (the "**Condominium Regime**"), according to the Declaration of The Acropolis Gardens Condominium, recorded on July 22, 1988, with the Office of the Register of The City of New York, Queens County in Reel 2993, Page 2231 (as amended from time to time, the "**Condominium Declaration**"), together with the undivided percent interest more fully set forth on Exhibit A in and to the Common Elements (as defined in the Condominium Declaration) and the Limited Common Elements (as defined in the Condominium Declaration) benefitting the Unit, all assignment rights with respect to parking spaces and storage spaces and all land and improvements now or hereafter located thereon, including, without limitation, all other rights, titles and hereditaments attributable to the Unit which are more particularly described on Exhibit A attached hereto and incorporated herein by this reference, the Common Elements (as defined in the Condominium Declaration) and the Limited Common Elements (as defined in the Condominium Declaration), together with all of the easements, rights, privileges, franchises, tenements, hereditaments and appurtenances now or hereafter thereunto belonging or in any way appertaining and all of the estate, right, title, interest, claim and demand whatsoever of Borrower therein or thereto, either at law or in equity, in possession or in expectancy, now or hereafter acquired (collectively, the "**Premises**"), together with the buildings, structures, fixtures and other improvements now or hereafter located on the Premises, including, without limitation, any such buildings, structures and improvements constituting the Unit (the "**Improvements**"), and all rights of Borrower as a unit owner under the Condominium Declaration or condominium association applicable to all or any portion of the Premises, including, without limitation, all rights of Borrower as unit owner under any document related to the Condominium Regime;

3

TOGETHER WITH, all right, title, interest and estate of Borrower now owned, or hereafter acquired, in and to the following property, rights, interests and estates (the Premises, the Improvements, and the property, rights, interests and estates hereinafter described are collectively referred to herein as the "**Property**"):

(a)     all easements, rights-of-way, strips and gores of land, streets, ways, alleys, passages, sewer rights, water, water courses, water rights and powers, air rights and development rights, rights to oil, gas, minerals, coal and other substances of any kind or character, and all estates, rights, titles, interests, privileges, liberties, tenements, hereditaments and appurtenances of any nature whatsoever, in any way belonging, relating or pertaining to the Premises and the Improvements; and the reversion and reversions, remainder and remainders, and all land lying in the bed of any street, road, highway, alley or avenue, opened, vacated or proposed, in front of or adjoining the Premises, to the center line thereof; and all the estates, rights, titles, interests, dower and rights of dower, curtesy and rights of curtesy, property, possession, claim and demand whatsoever, both at law and in equity, of Borrower of, in and to the Premises and the Improvements and every part and parcel thereof, with the appurtenances thereto;

(b)     all machinery, furniture, furnishings, equipment, computer software and hardware, fixtures (including all heating, air conditioning, plumbing, lighting, communications and elevator fixtures), inventory, materials, supplies and other articles of personal property and accessions thereof, renewals and replacements thereof and substitutions therefor, and other property of every kind and nature, tangible or intangible, owned by Borrower, or in which Borrower has or shall have an interest, now or hereafter located upon the Premises or the Improvements, or appurtenant thereto, and usable in connection with the present or future operation and occupancy of the Premises and the Improvements (hereinafter collectively referred to as the "**Equipment**"), including any leases of, deposits in connection with, and proceeds of any sale or transfer of any of the foregoing, and the right, title and interest of Borrower in and to any of the Equipment that may be subject to any "security interest" as defined in the Uniform Commercial Code , as in effect in the State where the Property is located (the "**UCC**"), superior in lien to the lien of this Security Instrument;

(c)     all awards or payments, including interest thereon, that may heretofore or hereafter be made with respect to the Premises or the Improvements, whether from the exercise of the right of eminent domain or condemnation (including any transfer made in lieu of or in anticipation of the exercise of such right), or for a change of grade, or for any other injury to or decrease in the value of the Premises or Improvements;

(d)     all leases and other agreements or arrangements heretofore or hereafter entered into affecting the use, enjoyment or occupancy of, or the conduct of any activity upon or in, the Premises or the Improvements, including any extensions, renewals, modifications or amendments thereof (hereinafter collectively referred to as the "**Leases**") and all rents, rent equivalents, moneys payable as damages (including payments by reason of the rejection of a Lease in a Bankruptcy Proceeding) or in lieu of rent or rent equivalents, royalties (including all oil and gas or other mineral royalties and bonuses), income, fees, receivables, receipts, revenues, deposits (including security, utility and other deposits), accounts, cash, issues, profits, charges for services rendered, and other consideration of whatever form or nature received by or paid to or for the account of or benefit of Borrower or its agents or employees from any and all sources arising from

4

or attributable to the Premises and/or Improvements, including all receivables, customer obligations, installment payment obligations and other obligations now existing or hereafter arising or created out of the sale, lease, sublease, license, concession or other grant of the right of the use and occupancy of the Premises or the Improvements, rendering of services by Borrower or any of its agents or employees and proceeds, if any, from business interruption or other loss of income insurance (hereinafter collectively referred to as the "**Rents**"), together with all proceeds from the sale or other disposition of the Leases and the right to receive and apply the Rents to the payment of the Debt;

       (e)    all proceeds of and any unearned premiums on any insurance policies covering the Property, including the right to receive and apply the proceeds of any insurance, judgments, or settlements made in lieu thereof, for damage to the Property;

       (f)    the right, in the name and on behalf of Borrower, to appear in and defend any action or proceeding brought with respect to the Property and to commence any action or proceeding to protect the interest of Lender in the Property;

       (g)    all accounts (including reserve accounts), escrows, documents, instruments, chattel paper, claims, deposits and general intangibles, as the foregoing terms are defined in the UCC, and all franchises, trade names, trademarks, symbols, service marks, books, records, plans, specifications, designs, drawings, surveys, title insurance policies, permits, consents, licenses, management agreements, contract rights (including any contract with any architect or engineer or with any other provider of goods or services for or in connection with any construction, repair or other work upon the Property), approvals, actions, refunds of real estate taxes and assessments (and any other governmental impositions related to the Property) and causes of action that now or hereafter relate to, are derived from or are used in connection with the Property, or the use, operation, maintenance, occupancy or enjoyment thereof or the conduct of any business or activities thereon (hereinafter collectively referred to as the "**Intangibles**"); and

       (h)    all proceeds, products, offspring, rents and profits from any of the foregoing, including those from sale, exchange, transfer, collection, loss, damage, disposition, substitution or replacement of any of the foregoing.

Without limiting the generality of any of the foregoing, in the event that a case under the Bankruptcy Code is commenced by or against Borrower, pursuant to Section 552(b)(2) of the Bankruptcy Code, the security interest granted by this Security Instrument shall automatically extend to all Rents acquired by Borrower after the commencement of the case and shall constitute cash collateral under Section 363(a) of the Bankruptcy Code.

TO HAVE AND TO HOLD the Property unto Lender and its successors and assigns, forever;

PROVIDED, HOWEVER, these presents are upon the express condition that, if Borrower shall well and truly pay to Lender the Debt at the time and in the manner provided in the Loan Documents and shall well and truly abide by and comply with each and every covenant and condition set forth in the Loan Documents in a timely manner, these presents and the estate hereby granted shall cease, terminate and be void;

AmericasActive:9023956.6

AND Borrower represents and warrants to and covenants and agrees with Lender as follows:

1.      **Payment of Debt and Incorporation of Covenants, Conditions and Agreements.**  Borrower shall pay the Debt at the time and in the manner provided in the Loan Documents.  All the covenants, conditions and agreements contained in the Loan Documents are hereby made a part of this Security Instrument to the same extent and with the same force as if fully set forth herein.  Without limiting the generality of the foregoing, Borrower (i) agrees to insure, repair, maintain and restore damage to the Property, pay Taxes, and comply with Legal Requirements, in accordance with the Loan Agreement, and (ii) agrees that the Proceeds of Insurance and Awards for Condemnation shall be settled, held and applied in accordance with the Loan Agreement.

2.      **Leases and Rents.**

(a)      Borrower does hereby absolutely and unconditionally assign to Lender all of Borrower's right, title and interest in all current and future Leases and Rents, it being intended by Borrower that this assignment constitutes a present, absolute assignment and not an assignment for additional security only.  Such assignment shall not be construed to bind Lender to the performance of any of the covenants or provisions contained in any Lease or otherwise impose any obligation upon Lender.  Nevertheless, subject to the terms of this Section 2(a), Lender grants to Borrower a revocable license to operate and manage the Property and to collect the Rents subject to the requirements of the Loan Agreement.  Upon an Event of Default, without the need for notice or demand, the license granted to Borrower herein shall automatically be revoked, and Lender shall immediately be entitled to possession of all Rents in (or required by the terms of the Loan Documents to be deposited in) the Deposit Account (including all Subaccounts thereof) and all Rents collected thereafter (including Rents past due and unpaid), whether or not Lender enters upon or takes control of the Property.  Borrower hereby grants and assigns to Lender the right, at its option, upon revocation of the license granted herein, to enter upon the Property in person, by agent or by court-appointed receiver to collect the Rents.  Any Rents collected after the revocation of such license may be applied toward payment of the Debt in such priority and proportions as Lender in its sole discretion shall deem proper.

(b)      Borrower shall not enter into, modify, amend, cancel, terminate or renew any Lease except as provided in Section 5.9 of the Loan Agreement.

3.      **Use of Property.**  Borrower shall not initiate, join in, acquiesce in or consent to any change in any private restrictive covenant, zoning law or other public or private restriction, limiting or defining the uses which may be made of the Property.  If under applicable zoning provisions the use of the Property is or shall become a nonconforming use, Borrower shall not cause or permit such nonconforming use to be discontinued or abandoned without the consent of Lender.  Borrower shall not (i) change the use of the Property, (ii) permit or suffer to occur any waste on or to the Property or (iii) take any steps to convert the Property to a condominium or cooperative form of ownership.

6

4.     **Transfer or Encumbrance of the Property.**

(a)     Borrower acknowledges that (i) Lender has examined and relied on the creditworthiness of Borrower and the experience of the directors and officers of Borrower in Borrower owning and such directors and officers operating properties such as the Property in agreeing to make the Loan, (ii) Lender will continue to rely on Borrower's ownership of the Property as a means of maintaining the value of the Property as security for the Debt, and (iii) Lender has a valid interest in maintaining the value of the Property so as to ensure that, should Borrower default in the repayment of the Debt, Lender can recover the Debt by a sale of the Property.   Borrower shall not sell, convey, alienate, mortgage, encumber, pledge or otherwise transfer the Property or any part thereof, or suffer or permit any Transfer to occur, other than a Permitted Transfer.

(b)     Lender shall not be required to demonstrate any actual impairment of its security or any increased risk of default hereunder in order to declare the Debt immediately due and payable upon any Transfer in violation of this Section 4.   This provision shall apply to every sale, conveyance, alienation, mortgage, encumbrance, pledge or transfer of the Property (and every other Transfer) regardless of whether voluntary or not.   Any Transfer made in contravention of this Section 4 shall be null and void and of no force and effect.   Borrower agrees to bear and shall pay or reimburse Lender on demand for all reasonable expenses (including reasonable attorneys' fees and disbursements, title search costs and title insurance endorsement premiums) incurred by Lender in connection with the review, approval and documentation of any Permitted Transfer.

5.     **Changes in Laws Regarding Taxation.**   If any law is enacted or adopted or amended after the date of this Security Instrument which deducts the Debt from the value of the Property for the purpose of taxation or which imposes a tax, either directly or indirectly, on the Debt or Lender's interest in the Property, Borrower will pay such tax, with interest and penalties thereon, if any (excluding any income taxes or franchise taxes imposed upon Lender).   If Lender is advised by its counsel that the payment of such tax or interest and penalties by Borrower would be unlawful, taxable to Lender or unenforceable, or would provide the basis for a defense of usury, then Lender shall have the option, by notice of not less than one hundred and twenty (120) days, to declare the Debt immediately due and payable.

6.     **No Credits on Account of the Debt.**   Borrower shall not claim or demand or be entitled to any credit on account of the Debt for any part of the Taxes assessed against the Property, and no deduction shall otherwise be made or claimed from the assessed value of the Property for real estate tax purposes by reason of this Security Instrument or the Debt.   If such claim, credit or deduction shall be required by law, Lender shall have the option, by notice of not less than one hundred and twenty (120) days, to declare the Debt immediately due and payable.

7.     **Further Acts, Etc.**   Borrower shall, at its sole cost, perform, execute, acknowledge and deliver all and every such further acts, deeds, conveyances, mortgages, assignments, notices of assignment, transfers and assurances as Lender shall, from time to time, require, for the better assuring, conveying, assigning, transferring, and confirming unto Lender the property and rights hereby mortgaged, given, granted, bargained, sold, alienated, enfeoffed, conveyed, confirmed, pledged, assigned and hypothecated or intended now or hereafter so to be, or which Borrower may be or may hereafter become bound to convey or assign to Lender, or for carrying out the intention

7

or facilitating the performance of the terms of this Security Instrument, or for filing, registering or recording this Security Instrument or for facilitating the sale and transfer of the Loan and the Loan Documents in connection with a "Secondary Market Transaction" as described in Section 9.1 of the Loan Agreement. Upon foreclosure, the appointment of a receiver or any other relevant action, Borrower shall, at its sole cost, cooperate fully and completely to effect the assignment or transfer of any license, permit, agreement or any other right necessary or useful to the operation of the Property. Borrower grants to Lender an irrevocable power of attorney coupled with an interest for the purpose of exercising and perfecting any and all rights and remedies available to Lender at law and in equity, including such rights and remedies available to Lender pursuant to this Section 7, which power of attorney shall be exercisable following ten (10) days' notice to Borrower, and Borrower's failure to take further action as requested by Lender for the exercise and perfection of Lender's rights and remedies within such ten (10) day period.

**8.**      **Recording of Security Instrument, Etc.**  Borrower forthwith upon the execution and delivery of this Security Instrument and thereafter, from time to time, shall cause this Security Instrument, and any security instrument creating a lien or security interest or evidencing the lien hereof upon the Property and each instrument of further assurance to be filed, registered or recorded in such manner and in such places as may be required by any present or future law in order to publish notice of and fully to protect the lien or security interest hereof upon, and the interest of Lender in, the Property. Borrower shall pay all filing, registration or recording fees, all expenses incident to the preparation, execution and acknowledgment of and all federal, state, county and municipal, taxes, duties, imposts, documentary stamps, assessments and charges arising out of or in connection with the execution and delivery of, this Security Instrument, any supplemental hereto, any security instrument with respect to the Property or any instrument of further assurance, except where prohibited by law so to do. Borrower shall hold harmless and indemnify Lender, its successors and assigns, against any liability incurred by reason of the imposition of any tax on the making or recording of this Security Instrument.

**9.**      **Right to Cure Defaults.**  Upon the occurrence of any Event of Default, Lender may, but without any obligation to do so and without notice to or demand on Borrower and without releasing Borrower from any obligation hereunder, perform the obligations in Default in such manner and to such extent as Lender may deem necessary to protect the security hereof. Lender is authorized to enter upon the Property for such purposes or appear in, defend or bring any action or proceeding to protect its interest in the Property or to foreclose this Security Instrument or collect the Debt, and the cost and expense thereof (including reasonable attorneys' fees and disbursements to the extent permitted by law), with interest thereon at the Default Rate for the period after notice from Lender that such cost or expense was incurred to the date of payment to Lender, shall constitute a portion of the Debt, shall be secured by this Security Instrument and the other Loan Documents and shall be due and payable to Lender upon demand.

**10.**      **Remedies.**

(a)      Upon the occurrence of any Event of Default, Lender may take such action, without notice or demand, as it deems advisable to protect and enforce its rights against Borrower and in and to the Property, by Lender itself or otherwise, including the following actions, each of which may be pursued concurrently or otherwise, at such time and in such order as Lender may

8

determine, in its sole discretion, without impairing or otherwise affecting the other rights and remedies of Lender:

(i)     declare the entire Debt to be immediately due and payable;

(ii)     institute a proceeding or proceedings, judicial or nonjudicial, to the extent permitted by law, by advertisement or otherwise, for the complete foreclosure of this Security Instrument, in which case the Property may be sold for cash or upon credit in one or more parcels or in several interests or portions and in any order or manner;

(iii)     with or without entry, to the extent permitted and pursuant to the procedures provided by applicable law, institute proceedings for the partial foreclosure of this Security Instrument for the portion of the Debt then due and payable, subject to the continuing lien of this Security Instrument for the balance of the Debt not then due;

(iv)     sell for cash or upon credit the Property and all estate, claim, demand, right, title and interest of Borrower therein and rights of redemption thereof, pursuant to the power of sale, to the extent permitted by law, or otherwise, at one or more sales, as an entirety or in parcels, at such time and place, upon such terms and after such notice thereof as may be required by law;

(v)     institute an action, suit or proceeding in equity for the specific performance of any covenant, condition or agreement contained herein or in any other Loan Document;

(vi)     recover judgment on the Note either before, during or after any proceeding for the enforcement of this Security Instrument;

(vii)     apply for the appointment of a trustee, receiver, liquidator or conservator of the Property, without notice and without regard for the adequacy of the security for the Debt and without regard for the solvency of the Borrower or of any Person liable for the payment of the Debt;

(viii)     enforce Lender's interest in the Leases and Rents and enter into or upon the Property, either personally or by its agents, nominees or attorneys and dispossess Borrower and its agents and employees therefrom, and Lender may (A) use, operate, manage, control, insure, maintain, repair, restore and otherwise deal with the Property and conduct the business thereat; (B) complete any construction on the Property in such manner and form as Lender deems advisable; (C) make alterations, additions, renewals, replacements and improvements to or on the Property; (D) exercise all rights and powers of Borrower with respect to the Property, whether in the name of Borrower or otherwise, including the right to make, cancel, enforce or modify Leases, obtain and evict tenants, and demand, sue for, collect and receive Rents; and (E) apply the receipts from the Property to the payment of the Debt, after deducting therefrom all expenses (including reasonable

9

attorneys' fees and disbursements) incurred in connection with the aforesaid operations and all amounts necessary to pay the Taxes, insurance and other charges in connection with the Property, as well as just and reasonable compensation for the services of Lender, and its counsel, agents and employees;

(ix)    require Borrower to pay monthly in advance to Lender, or any receiver appointed to collect the Rents, the fair and reasonable rental value for the use and occupation of any portion of the Property occupied by Borrower, and require Borrower to vacate and surrender possession of the Property to Lender or to such receiver, and, in default thereof, evict Borrower by summary proceedings or otherwise; or

(x)     pursue such other rights and remedies as may be available at law or in equity or under the UCC, including the right to receive and/or establish a lock box for all Rents and proceeds from the Intangibles and any other receivables or rights to payments of Borrower relating to the Property.

In the event of a sale, by foreclosure or otherwise, of less than all of the Property, this Security Instrument shall continue as a lien on the remaining portion of the Property.

(b)     The proceeds of any sale made under or by virtue of this Section 10, together with any other sums which then may be held by Lender under this Security Instrument, whether under the provisions of this Section 10 or otherwise, shall be applied by Lender to the payment of the Debt in such priority and proportion as Lender in its sole discretion shall deem proper.

(c)     Lender may adjourn from time to time any sale by it to be made under or by virtue of this Security Instrument by announcement at the time and place appointed for such sale or for such adjourned sale or sales; and, except as otherwise provided by any applicable law, Lender, without further notice or publication, may make such sale at the time and place to which the same shall be so adjourned.

(d)     Upon the completion of any sale or sales pursuant hereto, Lender, or an officer of any court empowered to do so, shall execute and deliver to the accepted purchaser or purchasers a good and sufficient instrument, or good and sufficient instruments, conveying, assigning and transferring all estate, right, title and interest in and to the property and rights sold. Lender is hereby irrevocably appointed the true and lawful attorney of Borrower, which appointment is coupled with an interest, in its name and stead, to make all necessary conveyances, assignments, transfers and deliveries of the Property and rights so sold and for that purpose Lender may execute all necessary instruments of conveyance, assignment and transfer, and may substitute one or more persons with like power, Borrower hereby ratifying and confirming all that its said attorney or such substitute or substitutes shall lawfully do by virtue hereof. Any sale or sales made under or by virtue of this Section 10, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, shall operate to divest all the estate, right, title, interest, claim and demand whatsoever, whether at law or in equity, of Borrower in and to the properties and rights so sold, and shall be a perpetual bar both at

10

law and in equity against Borrower and against any and all persons claiming or who may claim the same, or any part thereof, from, through or under Borrower.

(e)     Upon any sale made under or by virtue of this <u>Section 10</u>, whether made under a power of sale or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, Lender may bid for and acquire the Property or any part thereof and in lieu of paying cash therefor may make settlement for the purchase price by crediting upon the Debt the net sales price after deducting therefrom the expenses of the sale and costs of the action and any other sums which Lender is authorized to deduct under this Security Instrument or any other Loan Document.

(f)     No recovery of any judgment by Lender and no levy of an execution under any judgment upon the Property or upon any other property of Borrower shall affect in any manner or to any extent the lien of this Security Instrument upon the Property or any part thereof, securing any of the remaining debt owed to Lender by Borrower, or any liens, rights, powers or remedies of Lender hereunder, but such liens, rights, powers and remedies of Lender shall continue unimpaired as before, until Lender has been fully repaid by Borrower for the remaining monies due Lender under the terms of the Loan Documents.

(g)     Lender may terminate or rescind any proceeding or other action brought in connection with its exercise of the remedies provided in this <u>Section 10</u> at any time before the conclusion thereof, as determined in Lender's sole discretion and without prejudice to Lender.

(h)     Lender may resort to any remedies and the security given by this Security Instrument or in any other Loan Document in whole or in part, and in such portions and in such order as determined in Lender's sole discretion. No such action shall in any way be considered a waiver of any rights, benefits or remedies evidenced or provided by any Loan Document. The failure of Lender to exercise any right, remedy or option provided in any Loan Document shall not be deemed a waiver of such right, remedy or option or of any covenant or obligation secured by any Loan Document. No acceptance by Lender of any payment after the occurrence of any Event of Default and no payment by Lender of any obligation for which Borrower is liable hereunder shall be deemed to waive or cure any Event of Default, or Borrower's liability to pay such obligation. No sale of all or any portion of the Property, no forbearance on the part of Lender, and no extension of time for the payment of the whole or any portion of the Debt or any other indulgence given by Lender to Borrower, shall operate to release or in any manner affect the interest of Lender in the remaining Property or the liability of Borrower to pay the Debt. No waiver by Lender shall be effective unless it is in writing and then only to the extent specifically stated. All costs and expenses of Lender in exercising its rights and remedies under this <u>Section 10</u> (including reasonable attorneys' fees and disbursements to the extent permitted by law), shall be paid by Borrower immediately upon notice from Lender, with interest at the Default Rate for the period after notice from Lender, and such costs and expenses shall constitute a portion of the Debt and shall be secured by this Security Instrument.

(i)     The interests and rights of Lender under the Loan Documents shall not be impaired by any indulgence, including (x) any renewal, extension or modification which Lender may grant with respect to any of the Debt, (y) any surrender, compromise, release, renewal, extension, exchange or substitution which Lender may grant with respect to the Property or any

11

portion thereof or (z) any release or indulgence granted to any maker, endorser, guarantor or surety of any of the Debt.

**11.   Right of Entry.**  In addition to any other rights or remedies granted under this Security Instrument, Lender and its agents shall have the right to enter and inspect the Property at any reasonable time during the term of this Security Instrument.  The cost of such inspections or audits shall be borne by Borrower should Lender determine that an Event of Default exists, including the cost of all follow up or additional investigations or inquiries deemed reasonably necessary by Lender.  The cost of such inspections, if not paid for by Borrower following demand, may be added to the principal balance of the sums due under the Note and this Security Instrument and shall bear interest thereafter until paid at the Default Rate.

**12.   Security Agreement.**  This Security Instrument is both a real property mortgage and a "security agreement" within the meaning of the UCC.  The Property includes both real and personal property and all other rights and interests, whether tangible or intangible in nature, of Borrower in the Property.  Borrower by executing and delivering this Security Instrument has granted and hereby grants to Lender, as security for the Debt, a security interest in the Property to the full extent that the Property may be subject to the UCC (such portion of the Property so subject to the UCC being called in this Section 12 the "**Collateral**").  This Security Instrument shall also constitute a "fixture filing" for the purposes of the UCC.  As such, this Security Instrument covers all items of the Collateral that are or are to become fixtures.  Information concerning the security interest herein granted may be obtained from the parties at the addresses of the parties set forth in the first paragraph of this Security Instrument.  If an Event of Default shall occur, Lender, in addition to any other rights and remedies which it may have, shall have and may exercise immediately and without demand, any and all rights and remedies granted to a secured party upon default under the UCC, including, without limiting the generality of the foregoing, the right to take possession of the Collateral or any part thereof, and to take such other measures as Lender may deem necessary for the care, protection and preservation of the Collateral.  Upon request or demand of Lender, Borrower shall at its expense assemble the Collateral and make it available to Lender at a convenient place acceptable to Lender.  Borrower shall pay to Lender on demand any and all expenses, including reasonable attorneys' fees and disbursements, incurred or paid by Lender in protecting the interest in the Collateral and in enforcing the rights hereunder with respect to the Collateral.  Any notice of sale, disposition or other intended action by Lender with respect to the Collateral, sent to Borrower in accordance with the provisions hereof at least ten days prior to such action, shall constitute commercially reasonable notice to Borrower.  The proceeds of any disposition of the Collateral, or any part thereof, may be applied by Lender to the payment of the Debt in such priority and proportions as Lender in its sole discretion shall deem proper.  In the event of any change in name, identity, structure or place of incorporation, organization or formation of Borrower, Borrower shall notify Lender thereof and promptly after request shall file and record such UCC forms as are necessary to maintain the priority of Lender's lien upon and security interest in the Collateral, and shall pay all expenses and fees in connection with the filing and recording thereof.  If Lender shall require the filing or recording of additional UCC forms or continuation statements, Borrower shall, promptly after request, file and record such UCC forms or continuation statements as Lender shall deem necessary, and shall pay all expenses and fees in connection with the filing and recording thereof, it being understood and agreed, however, that no such additional documents shall increase Borrower's obligations under the Loan Documents.  Borrower hereby irrevocably appoints Lender as its attorney-in-fact, coupled with an interest, to

12

file with the appropriate public office on its behalf any financing or other statements naming Lender, as secured party, and Borrower, as debtor, in connection with the Collateral covered by this Security Instrument.

13.     **Actions and Proceedings**.  Lender has the right to appear in and defend any action or proceeding brought with respect to the Property and to bring any action or proceeding, in the name and on behalf of Borrower, which Lender, in its sole but reasonably exercised discretion, decides should be brought to protect its or their interest in the Property.  Lender shall, at its option, be subrogated to the lien of any mortgage, deed of trust or other security instrument discharged in whole or in part by the Debt, and any such subrogation rights shall constitute additional security for the payment of the Debt.

14.     **Marshaling and Other Matters**.  Borrower hereby waives, to the extent permitted by law, the benefit of all appraisement, valuation, stay, extension, reinstatement and redemption laws now or hereafter in force and all rights of marshaling in the event of any sale hereunder of the Property or any part thereof or any interest therein.  Further, Borrower hereby expressly waives any and all rights of redemption from sale under any order or decree of foreclosure of this Security Instrument on behalf of Borrower, and on behalf of each and every Person acquiring any interest in or title to the Property subsequent to the date of this Security Instrument and on behalf of all Persons to the extent permitted by applicable law.  The lien of this Security Instrument shall be absolute and unconditional and shall not in any manner be affected or impaired by any acts or omissions whatsoever of Lender and, without limiting the generality of the foregoing, the lien hereof shall not be impaired by (i) any acceptance by Lender of any other security for any portion of the Debt, (ii) any failure, neglect or omission on the part of Lender to realize upon or protect any portion of the Debt or any collateral security therefor or (iii) any release (except as to the property released), sale, pledge, surrender, compromise, settlement, renewal, extension, indulgence, alteration, changing, modification or disposition of any portion of the Debt or of any of the collateral security therefor;  and Lender may foreclose, or exercise any other remedy available to Lender under other Loan Documents without first exercising or enforcing any of its remedies under this Security Instrument, and any exercise of the rights and remedies of Lender hereunder shall not in any manner impair the Debt or the liens of any other Loan Document or any of Lender's rights and remedies thereunder.

15.     **Notices**.  All notices, consents, approvals and requests required or permitted hereunder (a "***Notice***") shall be given in writing and shall be effective for all purposes if either hand delivered with receipt acknowledged, or by a nationally recognized overnight delivery service (such as Federal Express), or by certified or registered United States mail, return receipt requested, postage prepaid, or by facsimile and confirmed by facsimile answer back, in each case addressed as follows (or to such other address or Person as a party shall designate from time to time by Notice to the other party):  If to Lender: Natixis Real Estate Capital LLC, 1251 Avenue of the Americas, New York, NY 10020; Attention: Real Estate Administration, Telecopier: (212) 891-6851 with copies to: Winston & Strawn LLP, 200 Park Avenue, New York, New York 10166, Attention: Corey A. Tessler, Esq. Telecopier: (212) 294-4700; if to Borrower: c/o Metropolitan Pacific Properties, Inc., 21-77 33rd Street, Astoria, New York 11105, Attention: Steve Osman, Telecopier: (718) 626-1903, with a copy to: DeJesu Maio & Associates, PC, 191 New York Avenue, Huntington, New York 11743, Attention: Joe DeJesu, Esq., Telecopier: (631) 504-0692. A Notice shall be deemed to have been given: (a) in the case of hand delivery, at the time of

13

delivery; (b) in the case of registered or certified mail, when delivered or the first attempted delivery on a Business Day; (c) in the case of overnight delivery, upon the first attempted delivery on a Business Day; or (d) in the case of facsimile transmission, when sent and electronically confirmed.

16.     **Inapplicable Provisions.**   If any term, covenant or condition of this Security Instrument is held to be invalid, illegal or unenforceable in any respect, this Security Instrument shall be construed without such provision.

17.     **Headings.**   The section headings in this Security Instrument are for convenience of reference only and are not to be construed as defining or limiting, in any way, the scope or intent of the provisions hereof.

18.     **Duplicate Originals.**   This Security Instrument may be executed in any number of duplicate originals and each such duplicate original shall be deemed to be an original.   However, Lender acknowledges that Borrower owes only one Debt of $45,000,000.00 in principal, plus applicable interest and other monies pursuant to the Loan Documents.

19.     **Definitions.**   Unless the context clearly indicates a contrary intent or unless otherwise specifically provided herein, words used in this Security Instrument may be used interchangeably in singular or plural form; and the word "**Borrower**" shall mean "each Borrower and any subsequent owner or owners of the Property or any part thereof or any interest therein," the word "**Lender**" shall mean "Lender and any subsequent holder of the Note," the words "**Property**" shall include any portion of the Property and any interest therein, the word "**including**" means "including but not limited to" and the words "**attorneys' fees**" shall include any and all reasonable attorneys' fees, paralegal and law clerk fees, including, fees at the pre-trial, trial and appellate levels incurred or paid by Lender in protecting its interest in the Property and collateral and enforcing its rights hereunder.

20.     **Homestead.**   Borrower hereby waives and renounces all homestead and exemption rights provided by the Constitution and the laws of the United States and of any state, in and to the Property as against the collection of the Debt, or any part thereof.

21.     **Assignments.**   Lender shall have the right to assign or transfer its rights under this Security Instrument without limitation but upon notice to Borrower.   Any assignee or transferee shall be entitled to all the benefits afforded Lender under this Security Instrument.

22.     **Waiver of Jury Trial.  BORROWER HEREBY AGREES NOT TO ELECT A TRIAL BY JURY OF ANY ISSUE TRIABLE OF RIGHT BY JURY, AND WAIVES ANY RIGHT TO TRIAL BY JURY FULLY TO THE EXTENT THAT ANY SUCH RIGHT SHALL NOW OR HEREAFTER EXIST WITH REGARD TO THIS SECURITY INSTRUMENT OR ANY OTHER LOAN DOCUMENT, OR ANY CLAIM, COUNTERCLAIM OR OTHER ACTION ARISING IN CONNECTION THEREWITH. THIS WAIVER OF RIGHT TO TRIAL BY JURY IS GIVEN KNOWINGLY AND VOLUNTARILY BY BORROWER, AND IS INTENDED TO ENCOMPASS INDIVIDUALLY EACH INSTANCE AND EACH ISSUE AS TO WHICH THE RIGHT TO A TRIAL BY JURY WOULD OTHERWISE ACCRUE.   LENDER IS HEREBY**

**AUTHORIZED TO FILE A COPY OF THIS SECTION 22 IN ANY PROCEEDING AS CONCLUSIVE EVIDENCE OF THIS WAIVER BY BORROWER.**

23.     **Consents.**   Any consent or approval by Lender in any single instance shall not be deemed or construed to be Lender's consent or approval in any like matter arising at a subsequent date, and the failure of Lender to promptly exercise any right, power, remedy, consent or approval provided herein or at law or in equity shall not constitute or be construed as a waiver of the same nor shall Lender be estopped from exercising such right, power, remedy, consent or approval at a later date.   Any consent or approval requested of and granted by Lender pursuant hereto shall be narrowly construed to be applicable only to Borrower and the matter identified in such consent or approval and no third party shall claim any benefit by reason thereof, and any such consent or approval shall not be deemed to constitute Lender a venturer or partner with Borrower nor shall privity of contract be presumed to have been established with any such third party.   If Lender deems it to be in its best interest to retain assistance of persons, firms or corporations (including attorneys, title insurance companies, appraisers, engineers and surveyors) with respect to a request for consent or approval, Borrower shall reimburse Lender for all costs reasonably incurred in connection with the employment of such persons, firms or corporations.

24.     **Employee Benefit Plan.**   During the term of this Security Instrument, unless Lender shall have previously consented in writing, (i) Borrower shall take no action that would cause it to become an "*employee benefit plan*" as defined in 29 C.F.R. Section 2510.3-101, or "*assets of a governmental plan*" subject to regulation under the state statutes, and (ii) Borrower shall not sell, assign or transfer the Property, or any portion thereof or interest therein, to any transferee that does not execute and deliver to Lender its written assumption of the obligations of this covenant.   Borrower shall protect, defend, indemnify and hold Lender harmless from and against all loss, cost, damage and expense (including all reasonable attorneys' fees, excise taxes and costs of correcting any prohibited transaction or obtaining an appropriate exemption) that Lender may incur as a result of Borrower's breach of this covenant.   This covenant and indemnity shall survive the extinguishment of the lien of this Security Instrument by foreclosure or action in lieu thereof; furthermore, the foregoing indemnity shall supersede any limitations on Borrower's liability under any of the Loan Documents.

25.     **Loan Repayment and Defeasance.**   Provided no Event of Default exists, this Security Instrument will be satisfied and discharged of record by Lender prior to the Maturity Date only in accordance with the terms and provisions set forth in Section 2.3 of the Loan Agreement.

26.     **Intentionally Omitted.**

27.     **Governing Law.**   WITH RESPECT TO MATTERS RELATING TO THE CREATION, PERFECTION AND PROCEDURES RELATING TO THE ENFORCEMENT OF THIS SECURITY INSTRUMENT, THIS SECURITY INSTRUMENT SHALL BE GOVERNED BY, AND BE CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE IN WHICH THE PROPERTY IS LOCATED, IT BEING UNDERSTOOD THAT, EXCEPT AS EXPRESSLY SET FORTH ABOVE IN THIS SECTION AND TO THE FULLEST EXTENT PERMITTED BY THE LAW OF SUCH STATE, THE LAW OF THE STATE OF NEW YORK SHALL GOVERN ALL MATTERS RELATING TO THIS SECURITY INSTRUMENT AND THE OTHER LOAN DOCUMENTS AND ALL OF THE INDEBTEDNESS OR

AmericasActive:9023956.6

OBLIGATIONS ARISING HEREUNDER OR THEREUNDER. ALL PROVISIONS OF THE LOAN AGREEMENT INCORPORATED HEREIN BY REFERENCE SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEW YORK, AS SET FORTH IN THE GOVERNING LAW PROVISION OF THE LOAN AGREEMENT.

   **28.**   **Exculpation.**   The liability of Borrower hereunder is limited pursuant to Section 10.1 of the Loan Agreement.

   **29.**   **State Specific Provisions**.   The following provisions shall govern and control in the event of a conflict with any other provision of this Security Instrument.

   (a)   Lien Law.   Pursuant to Section 13 of the lien law of New York, Borrower shall receive the advances secured hereby and shall hold the right to receive such advances as a trust fund to be applied first for the purpose of paying the cost of any improvement and shall apply such advances first to the payment of the cost of any such improvements on the Property before using any part of the total of the same for any other purpose.

   (b)   Real Property Law.

      (i)   Lender shall have all of the rights and remedies against lessees of the Property as set forth in Section 291(f) of the Real Property Law of New York.

      (ii)   The clauses and covenants contained in this Security Instrument that are construed by Section 254 of the New York Real Property Law shall be construed as provided in those sections. The additional clauses and covenants contained in this Security Instrument shall afford rights supplemental to and not exclusive of the rights conferred by the clauses and covenants construed by Section 254 and shall not impair, modify, alter or defeat such rights, notwithstanding that such additional clauses and covenants may relate to the same subject matter or provide for different or additional rights in the same or similar contingencies as the clauses and covenants construed by Section 254. The right of Lender arising under the clauses and covenants contained in this Security Instrument shall be separate, distinct and cumulative and none of them shall be in exclusion of the others. No act of Lender shall be construed as an election to proceed under any one provision herein to the exclusion of any other provision, anything herein or otherwise to the contrary notwithstanding. In the event of any inconsistencies between the provisions of Section 254 and the provisions of this Security Instrument, the provisions of this Security Instrument shall prevail.

16

(c)     <u>Maximum Secured Amount</u>.  Notwithstanding anything contained herein to the contrary, the maximum amount of indebtedness secured by this Security Instrument at execution or which under any contingency may become secured hereby at any time hereafter is the principal sum of $45,000,000.00 plus interest thereon, plus amounts expended by the Lender to maintain the lien of this Security Instrument or to protect the Property secured by this Security Instrument, including, without limitation, amounts in respect of insurance premiums, real estate taxes, reasonable litigation expenses to prosecute or defend the rights, remedies and lien of this Security Instrument or title to the Property secured hereby, and any costs, charges or amounts to which the Lender becomes subrogated upon payment, whether under recognized principles of law or equity or under express statutory authority, together with interest on all the foregoing amounts at the Default Interest Rate in accordance with the terms of the Loan Documents.

(d)     <u>Transfer Taxes</u>.

(i)     In the event of any sale or transfer of the Property, or any part thereof, including any sale or transfer by reason of foreclosure of this Security Instrument or any prior or subordinate mortgage or by deed in lieu of any such foreclosure, Borrower or Buyer as the case may be, shall timely and duly complete, execute and deliver to Lender all forms and supporting documentation required by any taxing authority to estimate and fix any tax payable by reason of such sale or transfer or recording of the deed evidencing such sale or transfer, including any New York State Real Estate Transfer Tax payable pursuant to Article 31 of the New York Tax Law and New York City Real Property Transfer Tax payable pursuant to Chapter 21, Title 11 of the New York City Administrative Code (individually, a "<u>Transfer Tax</u>" and collectively, the "<u>Transfer Taxes</u>").

(ii)    Borrower shall pay the Transfer Taxes that may hereafter become due and payable with respect to any sale or transfer of the Property, and in default of such payment, Lender may pay the same and the amount of such payment shall be added to the indebtedness secured hereby and, unless incurred in connection with a foreclosure of this Security Instrument or deed in lieu of such foreclosure, shall be secured by this Security Instrument.

(iii)   Borrower shall indemnify and hold harmless Lender against (i) any and all liability incurred by Lender for the payment of any Transfer Tax with respect to any transfer of the Property by reason of foreclosure, and (ii) any and all reasonable out-of-pocket expenses incurred by Lender in connection therewith including, without limitation, interest, penalties and reasonable attorneys' fees.

(iv)    The obligation to pay the Transfer Taxes and indemnify Lender under this Section is a personal obligation of Borrower, whether or not Borrower is personally obligated to pay the indebtedness

17

secured by this Security Instrument, and shall be binding upon and enforceable against the distributees, successors and assigns of Borrower with the same force and effect as though each of them had personally executed and delivered this Security Instrument, notwithstanding any exculpation provision in favor of Borrower with respect to the payment of any other monetary obligations under this Security Instrument.  The obligation under this subsection shall not be deemed to expand the liability any guarantor under any indemnity or guaranty executed in connection with the loan secured hereby.

(v)     In the event that Borrower fails or refuses to pay a tax payable by Borrower with respect to a sale or transfer by reason of a foreclosure of this Security Instrument, the amount of the tax, any interest or penalty applicable thereto and any other amount payable pursuant to Borrower's obligation to indemnify Lender under this Section may, at the sole option of Lender, be paid as an expense of the sale out of the proceeds of the mortgage foreclosure sale.

(vi)    The provisions of this Section shall survive any transfer and the delivery of the deed affecting such transfer.  Nothing in this Section shall be deemed to grant to Borrower any greater rights to sell, assign or otherwise transfer the Property than are expressly provided hereinabove nor to deprive Lender of any right to refuse to consent to any transaction referred to in this Section.

**30.     Assignment of Security Instrument**.  Notwithstanding anything to the contrary contained herein or in the other Loan Documents, if permitted by applicable laws, including, without limitation, Section 275 of the Real Property Law of the State of New York, Lender shall, upon receipt by it (except by reason of a foreclosure of the lien of the Security Instrument) of the unpaid principal amount of all of the Obligations and Other Obligations, together with accrued interest and all other sums which may be owing to it pursuant to the Loan Documents, prepare and deliver, at Borrower's expense, to the person or entity making such payment, (i) an assignment (in recordable form, to the extent requested by Borrower), without recourse, representation or warranty, of its right, title and interest in the Note, the Security Instrument and the other Loan Documents (or if requested by Borrower, an assignment (without recourse, representation or warranty other than a representation by Lender that it is the current holder of the Loan Documents) of its interest in the Note and the Security Instrument only, and termination of the other Loan Documents) and (ii) the original Note, recorded Security Instrument and other Loan Documents (or termination of the other Loan Documents, if applicable).  In the event that the original Note, recorded Security Instrument or other Loan Documents are lost, misplaced or otherwise unavailable for delivery as contemplated by this Section 31, Lender may provide an affidavit of lost note, mortgage or other loan documents, as applicable in lieu thereof.

IN WITNESS WHEREOF, Borrower has executed this Security Instrument as of the day and year first above written.

**BORROWER:**

**ACROPOLIS GARDENS REALTY CORP.,**
a New York corporation

By: _____
　　Name: Debbie Vazquez
　　Title:　President


STATE OF NEW YORK　　　)
　　　　　　　　　　　　　) ss:
COUNTY OF　Suffolk　　　)

On the 12th day of April in the year 2017 before me, the undersigned, personally appeared Debra Vazquez, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me he executed the same in his/her capacity, and that by his/her signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

_____
Notary Public

[SEAL]

*[Natixis: Acropolis Gardens – ARC Mortgage – Signature Page]*

LENDER'S ACKNOWLEDGMENT AND CONSENT

Lender is executing this Amended, Restated and Consolidated Mortgage, Assignment of Leases and Rents and Security Agreement to signify its consent to the amendment, restatement and consolidation of the Existing Mortgages as set forth above.  Nothing herein shall, or shall be deemed to, obligate Lender for repayment of any amount evidenced by the Note or secured by this Amended, Restated and Consolidated Mortgage, Assignment of Leases and Rents and Security Agreement.

**NATIXIS REAL ESTATE CAPITAL LLC,**
a Delaware limited liability company

By: _____
Name: Christopher Colon
Title:  Vice President

By: _____
Name: Michael Magner
Title:  Managing Director

STATE OF NEW YORK    )
                     ) ss:
COUNTY OF New York   )

On the 17 day of April in the year 2017 before me, the undersigned, personally appeared Christopher Colon, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me the he executed the same in his/her capacity, and that by his/her signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

_____
Notary Public

[SEAL]

TAMEKA F ANDERSON
Notary Public, State of New York
Registration #01AN6324831
Qualified In New York County
Commission Expires June 8, 2019

STATE OF NEW YORK    )
                     ) ss:
COUNTY OF New York   )

On the 17 day of April in the year 2017 before me, the undersigned, personally appeared Michael Magner, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me the he executed the same in his/her capacity, and that by his/her signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

_____
Notary Public

[SEAL]

TAMEKA F ANDERSON
Notary Public, State of New York
Registration #01AN6324831
Qualified In New York County
Commission Expires June 8, 2019

*[Natixis: Acropolis Gardens -- ARC Mortgage -- Signature Page]*

## Exhibit "A"
### LEGAL DESCRIPTION

The Unit known as the Residential Unit in the condominium known as The Acropolis Gardens Condominium (the "Condominium") in the building known as and by the street numbers 21-05 to 21-77 33rd Street and 21-06 to 21-78 35th Street, Astoria, New York (the "Building") and designated and described as the Residential Condominium Unit (the "Unit") in the Declaration (the "Declaration") establishing a plan for condominium ownership of the Building and the parcel of land on which it is situated (such land and the Building being collectively referred to as the "Property"), made under Article 9B of the Real Property Law of the State of New York, dated March 18, 1988, and recorded in the Queens County Clerk's Office on July 22, 1988 in Reel 2643 page 2288 and designated as Tax Lot No. 1002 in Block 830 on the Tax Map of the City of New York for the Borough of Queens and on the floor plans of the Building (the "Floor Plans"), certified by DCI Contracting Corp. (Edy B. Ingher, P.E.) on May 31, 1988 and filed in the Office of the Register of the City of New York, Queens County on July 22, 1988 as Condominium Plan No. 197.

TOGETHER with a 98% interest in the Common Elements, as such term is defined and described in the Declaration.

The Property upon which the Building is situated is known and designated as follows:

ALL that certain plot, piece or parcel of land, lying and being in the Borough and County of Queens, City and State of New York, bounded and described as follows:

BEGINNING at the corner formed by the intersection of the southerly side of 21st Avenue (Wolcott Avenue) with the westerly side of 35th Street (Bartow Street);

RUNNING THENCE southerly along the westerly side of 35th Street, 830.10 feet to the corner formed by the intersection of the westerly side of 35th Street with the northerly side of Ditmars Boulevard (Ditmars Avenue);

RUNNING THENCE westerly along the northerly side of Ditmars Boulevard, 200.05 feet to the corner formed by the intersection of the northerly side of Ditmars Boulevard with the easterly side of 33rd Street (Rapelje Avenue);

RUNNING THENCE northerly along the easterly side of 33rd Street, 830.10 feet to the corner formed by the intersection of the easterly side of 33rd Street with the southerly side of 21st Avenue;

RUNNING THENCE easterly along the southerly side of 21st Avenue, 200.05 feet to the corner first aforementioned and the point or place of BEGINNING.

TOGETHER with and subject to the rights, obligations, easements, restrictions and other provisions of the Declaration and of the By-Laws of the Condominium dated March 18, 1988 and recorded in the Queens County Clerk's Office on July 22, 1988 in Reel 2643 page 2288 (including but not limited to the Rules and Regulations thereunder) as such Declaration and By-

AmericasActive:9023956.6

Laws may be amended from time to time by instruments recorded in the Office of the Register of the City of New York, Queens County, all of which rights, obligations, easements, restrictions and other provisions, shall constitute covenants running with the land and shall bind any and all persons having at any time and interest or estate in the Unit, as though recited and stipulated at length herein; and subject to any other matters of record as of the date hereof.

EXHIBIT A-2

## SCHEDULE I
## PRIOR NOTES

A.    Promissory Note made by Acropolis Gardens Realty Corp. to National Consumer Cooperative Bank d/b/a NCB in the amount of $19,500,000.00 dated 06/21/2013.

Allonge from National Consumer Cooperative Bank d/b/a NCB to NCB, FSB dated 06/21/2013.

Allonge from NCB, FSB to U.S. Bank National Association, as Trustee for the Registered Holders of RBS Commercial Funding Inc., Commercial Mortgage Pass-Through Certificates, Series 2013-C15 dated 08/01/2013.

Allonge from U.S. Bank National Association, as Trustee for the Registered Holders of RBS Commercial Funding Inc., Commercial Mortgage Pass-Through Certificates, Series 2013-C15 to Sterling National Bank dated 07/17/2014.

B.    Gap Note made by Acropolis Gardens Realty Corp. to Sterling National Bank in the amount of $7,500,000.00 dated 07/17/2014.

Allonge from Sterling National Bank to Titan Capital ID, LLC dated 09/30/2016.

Amended and Restated Promissory Note made by and between Acropolis Gardens Realty Corp. and Sterling National Bank dated 07/17/2014 in the amount of $27,000,000.00.

C.    Gap Note made by Acropolis Gardens Realty Corp. to Titan Capital ID, LLC in the amount of $9,641,639.74 dated 12/23/2016.

Consolidation, Extended, Amended and Restated Mortgage Note made by and between Acropolis Gardens Realty Corp. and Titan Capital ID, LLC dated 12/23/2016 in the amount of $36,000,000.00.

Allonge from Titan Capital ID, LLC to Natixis Real Estate Capital LLC, dated April 21, 2017.

D.    Gap Note made by Acropolis Gardens Realty Corp. to Natixis Real Estate Capital LLC in the amount of $9,000,000.00 dated 04/21/2017.

Amended, Restated and Consolidated Note made by and between Acropolis Gardens Realty Corp. and Natixis Real Estate Capital LLC dated April 21, 2017 in the amount of $45,000,000.00.

## SCHEDULE II
## PRIOR MORTGAGES

A.   Mortgage made by Acropolis Gardens Realty Corp. to National Consumer Cooperative Bank d/b/a NCB in the amount of $19,500,000.00 dated 06/21/2013 and recorded in the Office of the City Register, Queens County on 08/15/2013 in CRFN 2013000323361.

   Assigned from National Consumer Cooperative Bank d/b/a NCB to NCB, FSB by Assignment of Mortgage dated 06/21/2013 and recorded in the Office of the City Register, Queens County on 08/15/2013 in CRFN 2013000323363.

   Assigned from NCB, FSB to U.S. Bank National Association, as Trustee for the Registered Holders of RBS Commercial Funding Inc., Commercial Mortgage Pass-Through Certificates, Series 2013-C15 by Assignment of Mortgage dated 08/01/2013 and recorded in the Office of the City Register, Queens County on 11/07/2013 in CRFN 2013000459242.

   Assigned from U.S. Bank National Association, as Trustee for the Registered Holders of RBS Commercial Funding Inc., Commercial Mortgage Pass-Through Certificates, Series 2013-C15 to Sterling National Bank by Assignment of Mortgage dated 07/17/2014 and recorded in the Office of the City Register, Queens County on 08/04/2014 in CRFN 2014000255753.

B.   Gap Mortgage made by Acropolis Gardens Realty Corp. to Sterling National Bank in the amount of $7,500,000.00 dated 07/17/2014 and recorded in the Office of the City Register, Queens County on 08/04/2014 in CRFN 2014000255754.

   Mortgage Consolidation, Extension and Modification Agreement made by and between Acropolis Gardens Realty Corp. and Sterling National Bank dated 07/17/2014 and recorded in the Office of the City Register, Queens County on 08/04/2014 in CRFN 2014000255755 consolidating Mortgage (A) and Mortgage (B) to form a single lien of $27,000,000.00.

   Assigned from Sterling National Bank to Titan Capital ID, LLC by Assignment of Mortgage dated 09/30/2016 and recorded in the Office of the City Register, Queens County on 01/13/2017 in CRFN 2017000020154.

C.   Gap Mortgage made by Acropolis Gardens Realty Corp. to Titan Capital ID, LLC in the amount of $9,641,639.74 dated 12/23/2016 and recorded in the Office of the City Register, Queens County on 01/13/2017 in CRFN 2017000020155.

   Consolidation, Modification and Extension Agreement, Assignment of Leases and Rents and Security Agreement made by and between Acropolis Gardens Realty Corp. and Titan Capital ID, LLC dated 12/23/2016 and recorded in the Office of the City Register, Queens County on 01/13/2017 in CRFN 2017000020156 consolidating Mortgages (A), (B) and (C) to form a single lien of $36,000,000.00.

AmericasActive:9023956.6

Assigned from Titan Capital ID, LLC to Natixis Real Estate Capital LLC by Assignment of Mortgage dated April 21, 2017 and to be duly recorded in the Office of the City Register, Queens County simultaneously herewith.

D.    Gap Mortgage made by Acropolis Gardens Realty Corp. to Natixis Real Estate Capital LLC in the amount of $9,000,000.00 dated 04/21/2017 and to be duly recorded in the Office of the City Register, Queens County simultaneously herewith.

AmericasActive:9023956.6

### AFFIDAVIT PURSUANT TO SECTION 255 OF THE
### TAX LAW OF THE STATE OF NEW YORK

(Amended, Restated and Consolidated Mortgage, Assignment of Leases and Rents,
Security Agreement and Fixture Filing)

| | | |
|---|---|---|
| **STATE OF NEW YORK** | ) | |
| | ) ss.: | |
| **COUNTY OF NEW YORK** | ) | |

Debbie Vazquez (the "Deponent"), being duly sworn, deposes and says that:

1.      Deponent is a duly elected, qualified and acting President of **ACROPOLIS GARDENS REALTY CORP.**, a New York corporation ("Borrower"), which Borrower is the owner of The Residential Unit in the Acropolis Gardens Condominium located at 21-05 33rd St., 21-15 33rd St., 21-27 33rd St., 21-37 33rd St., 21-47 33rd St.,21-57 33rd St., 21-67 33rd St., 21-77 33rd St., 21-06 35th St., 21-16 35th St., 21-28 35th St., 21-38 35th St., 21-48 35th St., 21-58 35th St., 21-68 35th St. and 21-78 35th St., Astoria, New York 10010 (the "Premises"), and said Deponent is familiar with the facts set forth herein.

2.      The Premises are encumbered by the mortgages (collectively, the "Mortgage") described on Schedule I annexed hereto and made a part hereof.  All required mortgage recording tax has been or simultaneously herewith will be paid in connection with the Mortgage.

3.      **NATIXIS REAL ESTATE CAPITAL LLC**, a Delaware limited liability company (the "Lender"), is the owner and holder of the Mortgage and the obligations secured thereby.

4.      The principal sum of $45,000,000.00 remains unpaid under the debt secured by the Mortgage.

5.      There have been no reloans or readvances of the principal amount secured by the Mortgage.

6.      The Amended, Restated and Consolidated Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing, dated as of April 21st, 2017, executed by Borrower and Lender (the "Agreement"), tendered herewith for recording is given for the purpose of modifying certain terms and conditions contained in the Mortgage, and the Agreement does not create or secure any new or further indebtedness or obligation other than the principal indebtedness or obligation secured by or which under any contingency may be secured by the Mortgage.

WHEREFORE, Deponent respectfully requests that the Agreement herewith tendered for the recording be declared exempt from taxation pursuant to the provisions of Section 255 of Article 11 of the New York Tax Law.

Name: Debbie Vazquez

Sworn to before me this
17 day of April, 2017.

Notary Public

> BONNIE M MUTIGNANI
> Notary Public, State of New York
> No. 01MU6150509
> Qualified in Queens County
> Commission Expires July 31, 20 18

## Schedule I

## MORTGAGE SCHEDULE

A.   Mortgage made by Acropolis Gardens Realty Corp. to National Consumer Cooperative Bank d/b/a NCB in the amount of $19,500,000.00 dated 06/21/2013 and recorded in the Office of the City Register, Queens County on 08/15/2013 in CRFN 2013000323361.

Assigned from National Consumer Cooperative Bank d/b/a NCB to NCB, FSB by Assignment of Mortgage dated 06/21/2013 and recorded in the Office of the City Register, Queens County on 08/15/2013 in CRFN 2013000323363.

Assigned from NCB, FSB to U.S. Bank National Association, as Trustee for the Registered Holders of RBS Commercial Funding Inc., Commercial Mortgage Pass-Through Certificates, Series 2013-C15 by Assignment of Mortgage dated 08/01/2013 and recorded in the Office of the City Register, Queens County on 11/07/2013 in CRFN 2013000459242.

Assigned from U.S. Bank National Association, as Trustee for the Registered Holders of RBS Commercial Funding Inc., Commercial Mortgage Pass-Through Certificates, Series 2013-C15 to Sterling National Bank by Assignment of Mortgage dated 07/17/2014 and recorded in the Office of the City Register, Queens County on 08/04/2014 in CRFN 2014000255753.

B.   Gap Mortgage made by Acropolis Gardens Realty Corp. to Sterling National Bank in the amount of $7,500,000.00 dated 07/17/2014 and recorded in the Office of the City Register, Queens County on 08/04/2014 in CRFN 2014000255754.

Mortgage Consolidation, Extension and Modification Agreement made by and between Acropolis Gardens Realty Corp. and Sterling National Bank dated 07/17/2014 and recorded in the Office of the City Register, Queens County on 08/04/2014 in CRFN 2014000255755 consolidating Mortgage (A) and Mortgage (B) to form a single lien of $27,000,000.00.

Assigned from Sterling National Bank to Titan Capital ID, LLC by Assignment of Mortgage dated 09/30/2016 and recorded in the Office of the City Register, Queens County on 01/13/2017 in CRFN 2017000020154.

C.   Gap Mortgage made by Acropolis Gardens Realty Corp. to Titan Capital ID, LLC in the amount of $9,641,639.74 dated 12/23/2016 and recorded in the Office of the City Register, Queens County on 01/13/2017 in CRFN 2017000020155.

Consolidation, Modification and Extension Agreement, Assignment of Leases and Rents and Security Agreement made by and between Acropolis Gardens Realty Corp. and Titan Capital ID, LLC dated 12/23/2016 and recorded in the Office of the City Register, Queens County on 01/13/2017 in CRFN 2017000020156 consolidating Mortgages (A), (B) and (C) to form a single lien of $36,000,000.00.

Assigned from Titan Capital ID, LLC to Natixis Real Estate Capital LLC by Assignment of Mortgage dated April 21, 2017 and to be duly recorded in the Office of the City Register, Queens County.

D.    Gap Mortgage made by Acropolis Gardens Realty Corp. to Natixis Real Estate Capital LLC in the amount of $9,000,000.00 dated 04/21/2017 and to be duly recorded in the Office of the City Register, Queens County

Amended, Restated and Consolidated Mortgage, Assignment of Leases and Rents and Security Agreement made by and between Acropolis Gardens Realty Corp. and Natixis Real Estate Capital LLC dated April 21, 2017 and to be duly recorded in the Office of the City Register, Queens County consolidating Mortgages (A), (B), (C) and (D) to form a single lien of $45,000,000.00.