# Exhibit I

## NOTE SPLITTER AGREEMENT

THIS **NOTE SPLITTER AGREEMENT** (this "**Agreement**") is dated and effective as of the 15th day of June, 2017, by and between **ACROPOLIS GARDENS REALTY CORP.**, a New York corporation, having its principal place of business at c/o Metropolitan Pacific Properties, Inc., 21-77 33rd Street, Astoria, New York 11105 ("**Borrower**"), and **NATIXIS REAL ESTATE CAPITAL LLC**, a Delaware limited liability company, having an address at 1251 Avenue of the Americas, New York, New York 10020 (together with its successors and/or assigns, "**Lender**").

W I T N E S S E T H :

WHEREAS, Lender is now the lawful owner and holder of that certain Amended, Restated and Consolidated Promissory Note, dated as of the date hereof, made by Borrower in favor of Lender (the "**Note**"), which Note evidences a loan made by Lender to Borrower in the original principal amount of $45,000,000.00 (the "**Loan**") pursuant to that certain Senior Loan Agreement between Borrower and Lender dated as of the date hereof (the "**Loan Agreement**"); and

WHEREAS, the Note is secured by, among other things, that certain Amended, Restated and Consolidated Mortgage, Assignment of Leases and Rents and Security Agreement from Borrower, as mortgagor, to Lender, as mortgagee (the "**Mortgage**"), with respect to the Premises (as defined in the Mortgage) described on Exhibit A hereto and all other Property (as defined in the Mortgage) (collectively, the "**Property**"); and

WHEREAS, there is presently outstanding on the Note an unpaid principal balance of $45,000,000.00 plus accrued interest thereon (said principal balance, accrued interest and all other sums which may or shall become due under the Note as modified, split, amended and restated pursuant to the provisions hereof, and the Loan Agreement, the Mortgage, and the Loan Documents (as defined in the Loan Agreement) are hereinafter collectively referred to as the "**Indebtedness**"); and

WHEREAS, Lender and Borrower have agreed, in the manner hereinafter set forth, that the Note shall be split and severed into two (2) notes, the first being Note A1 (defined herein), and the second being Note A2 (defined herein), which two (2) notes shall each be entitled to the benefits of the Loan Agreement and other Loan Documents and secured by the Mortgage.

NOW, THEREFORE, in consideration of the mutual promises and agreements contained herein and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Borrower hereby represents and warrants to and covenants and agrees with Lender as follows:

1. Capitalized terms used herein and not otherwise defined shall have the definitions given to such terms in the Loan Agreement.

2. All of the representations, warranties, covenants and other terms and provisions of the Note, the Loan Agreement, the Mortgage, or any other Loan Documents, as modified hereby, including, without limitation, all defined terms and granting clauses, shall be applicable from and after the date hereof with the same force and effect as if such modifications had originally been included in the Note, the Loan Agreement, the Mortgage and the Loan Documents. The term "Loan Documents" when used in the Loan Agreement and any other Loan Document shall include this Agreement and the Replacement Notes (defined below).

3. Borrower and Lender hereby acknowledge and agree that there is now due and owing on the Note the principal sum of $45,000,000.00, plus interest, without defense, offset or counterclaim of any kind.

4. The Note is hereby modified so that it may be split and severed into two (2) portions, evidenced by Note A1 and Note A2, respectively, and in such manner and in such individual amounts as hereinafter set forth.

5. The Note is hereby split and severed and modified from and after the date hereof into two (2) notes as follows: (a) the first being that certain Promissory Note A1 evidencing Borrower's obligation to pay the original principal amount of $25,000,000.00 in the form attached hereto as <u>Exhibit B-1</u> executed and delivered by Borrower to Lender ("**Note A1**"); and (b) the second being that certain Promissory Note A2 evidencing Borrower's obligation to pay the original principal amount of $20,000,000.00 in the form attached hereto as <u>Exhibit B-2</u> executed and delivered by Borrower to Lender ("**Note A2**"; together with Note A1, collectively, the "**Replacement Notes**", and individually, each a "**Replacement Note**"), which Replacement Notes are each secured by the Mortgage and secured by and entitled to all benefits under the Loan Agreement and other Loan Documents. The Replacement Notes evidence the same indebtedness evidenced by the Note and fully substitute the Note in its entirety. The term "**Note A1 Outstanding Principal Balance**" shall mean, as of any date, the outstanding principal balance of Note A1; and the term "**Note A2 Outstanding Principal Balance**" shall mean, as of any date, the outstanding principal balance of Note A2. As of the date hereof the Note A1 Outstanding Principal Balance is $25,000,000.00, and the Note A2 Outstanding Principal Balance is $20,000,000.00.

6. Each Replacement Note shall accrue interest at the Interest Rate. With respect to any applicable period, interest on each Replacement Note shall be calculated in accordance with <u>Section 2.5.2</u> of the Loan Agreement; *provided, however*, that interest with respect to Note A1 shall be calculated based on the Note A1 Outstanding Principal Balance, and interest with respect to Note A2 shall be calculated based on the Note A2 Outstanding Principal Balance.

7. For purposes of <u>Section 2.2.2</u> of the Loan Agreement, interest at the Default Rate with respect to each of the Replacement Notes shall be calculated in accordance with the definition of Default Rate, based on the Note A1 Outstanding Principal Balance and the Note A2 Outstanding Principal Balance, as applicable.

AmericasActive:9249123.4

8. Any Yield Maintenance Premium shall be allocated *pro rata* between each Replacement Note based on their respective outstanding principal balances.

9. Nothing in the Replacement Notes, as the same are herein or hereafter split or modified, or in any other agreement between Borrower and Lender, shall (a) extinguish the Indebtedness or create any new or additional indebtedness, nor (b) require Borrower to pay, or Lender to accept, interest in an amount which would subject Lender to any penalty or forfeiture under applicable law. In no event shall the total of all charges payable under the Note, or the obligations evidenced thereby and secured by the Mortgage, as herein or hereafter modified and/or split, or in any other agreement between Borrower and Lender, whether of interest or of such other charges which may or might be characterized as interest, exceed the maximum rate permitted to be charged under applicable law. Should Lender receive any payment which is or would be in excess of that permitted to be charged under such applicable law, such payment shall have been, and shall be deemed to have been, made in error and shall be considered payment of principal, and that portion of the Indebtedness which is principal shall be reduced by such payment in the inverse order of maturity.

10. Whenever the terms "Note" or "note" shall be used in the Loan Agreement and the Mortgage, such terms shall mean and refer to the Replacement Notes. All rights of Lender with respect to the Note (including, without limitation, all rights to transfer the Note) may be exercised separately with respect to each Replacement Note.

11. Lender and Borrower hereby confirm that, notwithstanding anything to the contrary contained in any of the Replacement Notes or any other Loan Document, Borrower shall not be permitted to prepay any Replacement Note in accordance with any subsection of <u>Section 2.3</u> of the Loan Agreement unless, simultaneous with such prepayment of such Replacement Note, Borrower also prepays each other Replacement Note in accordance with the applicable subsection of <u>Section 2.3</u> of the Loan Agreement.

12. Notwithstanding anything contained in the Loan Agreement, the Mortgage or in any other Loan Document, any application of sums by Lender towards the partial prepayment of the Indebtedness, including, without limitation, those resulting from the application of insurance or condemnation proceeds, shall be applied to sums due under each Replacement Note *pro rata* based on their respective outstanding principal balances.

13. Intentionally omitted.

14. Notwithstanding anything contained in the Loan Agreement, the Mortgage or in any other Loan Documents, payments of interest and principal due under the Loan shall be paid *pro rata* to the holder of Note A1 and the holder of Note A2 based on their respective outstanding principal balances.

15. Any written agreement or agreements hereafter entered into by and between Borrower and Lender which (i) extend the time of payment of the Indebtedness, (ii) change or modify the time or times of payment or the amount of the installments or fixed sums or the interest or the rate thereof, (iii) change, modify, extend or terminate other terms, provisions, covenants or conditions of this Agreement or of the Loan Agreement, the Mortgage or the

3

Replacement Notes secured by the Mortgage as the same are herein or hereafter split or modified, or (iv) release or sever the lien of the Mortgage, as the same is herein or hereafter split or modified, shall be effective in accordance with the terms and provisions thereof and shall be binding according to the terms thereof on the owner or holder of subordinate, intervening or subsequent liens on the Property and any such liens shall continue to be subject and subordinate to the Mortgage, as the same is herein or hereafter split or modified, pursuant to this Agreement and any such agreement or agreements.

16. Borrower represents, warrants and covenants that there are no offsets, counterclaims or defenses against the Indebtedness, this Agreement, the Loan Agreement, the Mortgage, the other Loan Documents, or the Replacement Notes and that Borrower (and the undersigned representative of Borrower) has full power, authority and legal right to execute this Agreement and to keep and observe all of the terms of this Agreement on Borrower's part to be observed or performed.

17. No modification, amendment, extension, discharge, termination or waiver of any provision of this Agreement, nor consent to any departure by Borrower therefrom, shall in any event be effective unless the same shall be in a writing signed by the party against whom enforcement is sought, and then such waiver or consent shall be effective only in the specific instance, and for the purpose, for which given.

18. All covenants, promises and agreements in this Agreement, by or on behalf of Borrower, shall inure to the benefit of the legal representatives, successors and assigns of Lender.

19. This Agreement may be executed in any number of duplicate originals and each such duplicate original shall be deemed to constitute but one and the same instrument.

20. Wherever possible, each provision of this Agreement shall be interpreted in such manner as to be effective and valid under applicable law, but if any provision of this Agreement shall be prohibited by or invalid under applicable law, such provision shall be ineffective to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this Agreement.

21. (a) **THIS AGREEMENT WAS NEGOTIATED IN THE STATE OF NEW YORK AND MADE BY BORROWER AND ACCEPTED BY LENDER IN THE STATE OF NEW YORK, WHICH STATE THE PARTIES AGREE HAS A SUBSTANTIAL RELATIONSHIP TO THE PARTIES AND TO THE UNDERLYING TRANSACTION EMBODIED HEREBY, AND IN ALL RESPECTS, INCLUDING, WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, MATTERS OF CONSTRUCTION, VALIDITY AND PERFORMANCE, THIS AGREEMENT AND THE OBLIGATIONS ARISING HEREUNDER SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEW YORK APPLICABLE TO CONTRACTS MADE AND PERFORMED IN SUCH STATE (WITHOUT REGARD TO PRINCIPLES OF CONFLICT LAWS) AND ANY APPLICABLE LAW OF THE UNITED STATES OF AMERICA. TO THE FULLEST EXTENT PERMITTED BY LAW, BORROWER HEREBY UNCONDITIONALLY**

4

AND IRREVOCABLY WAIVES ANY CLAIM TO ASSERT THAT THE LAW OF ANY OTHER JURISDICTION GOVERNS THIS AGREEMENT AND THIS AGREEMENT SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK PURSUANT TO SECTION 5-1401 OF THE NEW YORK GENERAL OBLIGATIONS LAW.

(b) ANY LEGAL SUIT, ACTION OR PROCEEDING AGAINST LENDER OR BORROWER ARISING OUT OF OR RELATING TO THIS AGREEMENT MAY AT LENDER'S OPTION BE INSTITUTED IN ANY FEDERAL OR STATE COURT IN THE CITY OF NEW YORK, COUNTY OF NEW YORK, PURSUANT TO SECTION 5-1402 OF THE NEW YORK GENERAL OBLIGATIONS LAW, AND BORROWER WAIVES ANY OBJECTIONS WHICH IT MAY NOW OR HEREAFTER HAVE BASED ON VENUE AND/OR FORUM NON CONVENIENS OF ANY SUCH SUIT, ACTION OR PROCEEDING, AND BORROWER HEREBY IRREVOCABLY SUBMITS TO THE JURISDICTION OF ANY SUCH COURT IN ANY SUIT, ACTION OR PROCEEDING. BORROWER DOES HEREBY DESIGNATE AND APPOINT:

STEVE OSMAN
C/O METROPOLITAN PACIFIC PROPERTIES
21-77 33rd STREET
ASTORIA, NEW YORK 11105

AS ITS AUTHORIZED AGENT TO ACCEPT AND ACKNOWLEDGE ON ITS BEHALF SERVICE OF ANY AND ALL PROCESS WHICH MAY BE SERVED IN ANY SUCH SUIT, ACTION OR PROCEEDING IN ANY FEDERAL OR STATE COURT IN NEW YORK, NEW YORK, AND AGREES THAT SERVICE OF PROCESS UPON SAID AGENT AT SAID ADDRESS IN ACCORDANCE WITH THE C.P.L.R. AND WRITTEN NOTICE OF SAID SERVICE MAILED OR DELIVERED TO BORROWER IN THE MANNER PROVIDED HEREIN SHALL BE DEEMED IN EVERY RESPECT EFFECTIVE SERVICE OF PROCESS UPON BORROWER IN ANY SUCH SUIT, ACTION OR PROCEEDING IN THE STATE OF NEW YORK.  BORROWER (I) SHALL GIVE PROMPT NOTICE TO LENDER OF ANY CHANGED ADDRESS OF ITS AUTHORIZED AGENT HEREUNDER, (II) MAY AT ANY TIME AND FROM TIME TO TIME DESIGNATE A SUBSTITUTE AUTHORIZED AGENT WITH AN OFFICE IN NEW YORK, NEW YORK (WHICH SUBSTITUTE AGENT AND OFFICE SHALL BE DESIGNATED AS THE PERSON AND ADDRESS FOR SERVICE OF PROCESS), AND (III) SHALL PROMPTLY DESIGNATE SUCH A SUBSTITUTE IF ITS AUTHORIZED AGENT CEASES TO HAVE AN OFFICE IN NEW YORK, NEW YORK OR IS DISSOLVED WITHOUT LEAVING A SUCCESSOR.

22. BORROWER AND LENDER HEREBY AGREE NOT TO ELECT A TRIAL BY JURY OF ANY ISSUE TRIABLE OF RIGHT BY JURY, AND WAIVE ANY RIGHT TO TRIAL BY JURY FULLY TO THE EXTENT THAT ANY SUCH RIGHT SHALL NOW OR HEREAFTER EXIST WITH REGARD TO THE LOAN DOCUMENTS, OR ANY CLAIM, COUNTERCLAIM OR OTHER ACTION ARISING IN CONNECTION THEREWITH.  THIS WAIVER OF RIGHT TO TRIAL BY JURY IS GIVEN KNOWINGLY AND VOLUNTARILY BY BORROWER AND LENDER,

AmericasActive:9249123.4

AND IS INTENDED TO ENCOMPASS INDIVIDUALLY EACH INSTANCE AND EACH ISSUE AS TO WHICH THE RIGHT TO A TRIAL BY JURY WOULD OTHERWISE ACCRUE.  EITHER PARTY IS HEREBY AUTHORIZED TO FILE A COPY OF THIS PARAGRAPH IN ANY PROCEEDING AS CONCLUSIVE EVIDENCE OF THIS WAIVER BY THE OTHER.

[NO FURTHER TEXT ON THIS PAGE]

AmericasActive:9249123.4

IN WITNESS WHEREOF, Borrower and Lender have duly executed this Agreement as of the day and year first above written.

**BORROWER**:

**ACROPOLIS GARDENS REALTY CORP.**,
a New York corporation

By:_____
    Name: Debbie Vazquez
    Title:  President

**LENDER**:

**NATIXIS REAL ESTATE CAPITAL LLC,**
a Delaware limited liability company

By:_____
     Name: Christopher Colon
     Title:  Vice President


By:_____
     Name: Michael Magner
     Title:  Managing Director

## Exhibit A

[LEGAL DESCRIPTION OF PROPERTY]

The Unit known as the Residential Unit in the condominium known as The Acropolis Gardens Condominium (the "Condominium") in the building known as and by the street numbers 21-05 to 21-77 33rd Street and 21-06 to 21-78 35th Street, Astoria, New York (the "Building") and designated and described as the Residential Condominium Unit (the "Unit") in the Declaration (the "Declaration") establishing a plan for condominium ownership of the Building and the parcel of land on which it is situated (such land and the Building being collectively referred to as the "Property"), made under Article 9B of the Real Property Law of the State of New York, dated March 18, 1988, and recorded in the Queens County Clerk's Office on July 22, 1988 in Reel 2643 page 2288 and designated as Tax Lot No. 1002 in Block 830 on the Tax Map of the City of New York for the Borough of Queens and on the floor plans of the Building (the "Floor Plans"), certified by DCI Contracting Corp. (Edy B. Ingher, P.E.) on May 31, 1988 and filed in the Office of the Register of the City of New York, Queens County on July 22, 1988 as Condominium Plan No. 197.

TOGETHER with a 98% interest in the Common Elements, as such term is defined and described in the Declaration.

The Property upon which the Building is situated is known and designated as follows:

ALL that certain plot, piece or parcel of land, lying and being in the Borough and County of Queens, City and State of New York, bounded and described as follows:

BEGINNING at the corner formed by the intersection of the southerly side of 21st Avenue (Wolcott Avenue) with the westerly side of 35th Street (Bartow Street);

RUNNING THENCE southerly along the westerly side of 35th Street, 830.10 feet to the corner formed by the intersection of the westerly side of 35th Street with the northerly side of Ditmars Boulevard (Ditmars Avenue);

RUNNING THENCE westerly along the northerly side of Ditmars Boulevard, 200.05 feet to the corner formed by the intersection of the northerly side of Ditmars Boulevard with the easterly side of 33rd Street (Rapelje Avenue);

RUNNING THENCE northerly along the easterly side of 33rd Street, 830.10 feet to the corner formed by the intersection of the easterly side of 33rd Street with the southerly side of 21st Avenue;

RUNNING THENCE easterly along the southerly side of 21st Avenue, 200.05 feet to the corner first aforementioned and the point or place of BEGINNING.

TOGETHER with and subject to the rights, obligations, easements, restrictions and other provisions of the Declaration and of the By-Laws of the Condominium dated March 18, 1988 and recorded in the Queens County Clerk's Office on July 22, 1988 in Reel 2643 page 2288 (including but not limited to the Rules and Regulations thereunder) as such Declaration and By-Laws may be amended from time to time by instruments recorded in the Office of the Register

of the City of New York, Queens County, all of which rights, obligations, easements, restrictions and other provisions, shall constitute covenants running with the land and shall bind any and all persons having at any time and interest or estate in the Unit, as though recited and stipulated at length herein; and subject to any other matters of record as of the date hereof.

**Exhibit B-1**

[NOTE A1]

## PROMISSORY NOTE A1

$25,000,000.00                                                          June 15, 2017

THIS **PROMISSORY NOTE A1** (as amended, restated, replaced, supplemented or otherwise modified from time to time, this "*Note*") is made as of June 15, 2017 by **ACROPOLIS GARDENS REALTY CORP.**, a New York corporation (together with its permitted successors and assigns, "*Borrower*"), having an address at c/o Metropolitan Pacific Properties, Inc., 21-77 33rd Street, Astoria, NY 11105, to and in favor of **NATIXIS REAL ESTATE CAPITAL LLC** (together with its successors and/or assigns, "*Lender*"), a Delaware limited liability company, having an address at 1251 Avenue of the Americas, 5th Floor, New York, New York 10020.

### RECITALS:

WHEREAS, Lender is now the lawful owner and holder of that certain Amended, Restated and Consolidated Promissory Note, dated as of the date hereof, made by Borrower in favor of Lender (the "*ARC Note*"), which ARC Note evidences a loan made by Lender to Borrower in the original principal amount of $45,000,000.00 (the "*Loan*") pursuant to that certain Loan Agreement between Borrower and Lender dated as April 24, 2017 (as amended, modified, restated, consolidated, replaced or supplemented from time to time, the "*Loan Agreement*");

WHEREAS, Lender and Borrower intend these Recitals to be a material part of this Note; and

WHEREAS, Lender and Borrower have agreed, to split and sever, by way of that certain Note Splitter Agreement between Borrower and Lender of even date herewith, the ARC Note into two (2) notes, the first being that certain Promissory Note A1, and the second being this certain Promissory Note A2;

NOW, THEREFORE, in consideration of the premises and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto covenant and agree as follows:

Borrower promises to pay to the order of Lender, without any counterclaim, setoff or deduction whatsoever, on the Maturity Date (as hereinafter defined), at the office of Lender or at such other place as Lender may designate to Borrower in writing from time to time, the principal sum of TWENTY-FIVE MILLION AND NO/100 DOLLARS ($25,000,000.00), in lawful money of the United States of America with interest thereon to be computed from the date of this Note at the Applicable Interest Rate, and to be paid in accordance with the terms of this Note and that certain Loan Agreement. All capitalized terms not defined herein shall have the respective meanings set forth in the Loan Agreement.

1.    <u>Payment Terms</u>.  Borrower shall pay the Monthly Debt Service Payment Amount to Lender in the manner and at the times specified in <u>Article 2</u> of the Loan Agreement, which payments shall be applied in the order of priority set forth in said <u>Article 2</u>.  Borrower shall also

pay to Lender interest at the Default Rate, Late Payment Charges, the Yield Maintenance Premium, if any, and all other amounts due and payable as and when provided for in the Loan Agreement. The balance of the Principal, together with all accrued and unpaid interest thereon, and all other amounts payable to Lender hereunder, under the Loan Agreement and under the other Loan Documents shall be due and payable on the Maturity Date.

2.     **Loan Documents.**  This Note is evidence of that certain loan made by Lender to Borrower contemporaneously herewith and is executed pursuant to the terms and conditions of the Loan Agreement. This Note is secured by and entitled to the benefits of, among other things, the Security Instrument and the other Loan Documents.  Reference is made to the Loan Documents for a description of the nature and extent of the security afforded thereby, the rights of the holder hereof in respect of such security, the terms and conditions upon which this Note is secured and the rights and duties of the holder of this Note.  All of the agreements, conditions, covenants, provisions and stipulations contained in the Loan Agreement and the other Loan Documents are by this reference hereby made part of this Note to the same extent and with the same force and effect as if they were fully set forth in this Note, and Borrower covenants and agrees to keep and perform the same, or cause the same to be kept and performed, in accordance with their terms.

3.     **Loan Acceleration; Prepayment.**   The Debt shall, without notice, become immediately due and payable at the option of Lender upon the happening of any Event of Default.  This Note may not be prepaid except as otherwise expressly provided in, and subject to the terms and conditions, of the Loan Agreement.

4.     **Revival.**  To the extent that Borrower makes a payment or Lender receives any payment or proceeds for Borrower's benefit, which are subsequently invalidated, declared to be fraudulent or preferential, set aside or required to be repaid to a trustee, debtor in possession, receiver, custodian or any other party under the Bankruptcy Code or any other bankruptcy law, common law or equitable cause, then, to such extent, the obligations of Borrower hereunder intended to be satisfied shall be revived and continue as if such payment or proceeds had not been received by Lender.

5.     **Amendments.**  This Note may not be modified, amended, waived, extended, changed, discharged or terminated orally or by any act or failure to act on the part of Borrower or Lender, but only by an agreement in writing signed by the party against whom enforcement of any modification, amendment, waiver, extension, change, discharge or termination is sought. Whenever used, the singular number shall include the plural, the plural the singular, and the words "Lender" and "Borrower" shall include their respective successors, assigns, heirs, executors and administrators.  If Borrower consists of more than one person or party, the obligations and liabilities of each such person or party shall be joint and several.

6.     **Waiver.**  Borrower and all others who may become liable for the payment of all or any part of the Debt do hereby severally waive presentment and demand for payment, notice of dishonor, protest, notice of protest, notice of nonpayment, notice of intent to accelerate the maturity hereof and of acceleration.  No release of any security for the Debt or any Person liable for payment of the Debt, no extension of time for payment of this Note or any installment hereof,

2

AmericasActive:9246147.3

and no alteration, amendment or waiver of any provision of the Loan Documents made by agreement between Lender and any other person or party shall release, modify, amend, waive, extend, change, discharge, terminate or affect the liability of Borrower, and any other Person or party who may become liable under the Loan Documents, for the payment of all or any part of the Debt.

7.    **Exculpation.**  It is expressly agreed that recourse against Borrower for failure to perform and observe its obligations contained in this Note shall be limited as and to the extent provided in Section 10.1 of the Loan Agreement.

8.    **Notices.**  All notices or other communications required or permitted to be given pursuant hereto shall be given in the manner specified in the Loan Agreement directed to the parties at their respective addresses as provided therein.

9.    **Governing Law.**  **THIS NOTE SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK (WITHOUT REGARD TO PRINCIPLES OF CONFLICTS OF LAWS EXCEPT THAT IT IS THE INTENT OF BORROWER THAT THE PROVISIONS OF SECTION 5-1401 OF THE GENERAL OBLIGATIONS LAW OF THE STATE OF NEW YORK SHALL APPLY TO THIS NOTE) AND THE APPLICABLE LAWS OF THE UNITED STATES OF AMERICA, WHICH LAWS OF THE UNITED STATES OF AMERICA SHALL, TO THE EXTENT THE SAME PREEMPT SUCH STATE LAWS, GOVERN AND BE CONTROLLING.**

[THE REMAINDER OF THE PAGE IS INTENTIONALLY BLANK]

IN WITNESS WHEREOF, Borrower has executed this Note as of the date first written above.

BORROWER:

**ACROPOLIS GARDENS REALTY CORP.,**
a New York corporation

By: _____
    Name: Debbie Vazquez
    Title: President

**Exhibit B-2**

[NOTE A2]

# PROMISSORY NOTE A2

$20,000,000.00                                                                      June 15, 2017

THIS **PROMISSORY NOTE A2** (as amended, restated, replaced, supplemented or otherwise modified from time to time, this "*Note*") is made as of June 15, 2017 by **ACROPOLIS GARDENS REALTY CORP.**, a New York corporation (together with its permitted successors and assigns, "*Borrower*"), having an address at c/o Metropolitan Pacific Properties, Inc., 21-77 33rd Street, Astoria, NY 11105, to and in favor of **NATIXIS REAL ESTATE CAPITAL LLC** (together with its successors and/or assigns, "*Lender*"), a Delaware limited liability company, having an address at 1251 Avenue of the Americas, 5th Floor, New York, New York 10020.

## RECITALS:

WHEREAS, Lender is now the lawful owner and holder of that certain Amended, Restated and Consolidated Promissory Note, dated as of the date hereof, made by Borrower in favor of Lender (the "*ARC Note*"), which ARC Note evidences a loan made by Lender to Borrower in the original principal amount of $45,000,000.00 (the "*Loan*") pursuant to that certain Loan Agreement between Borrower and Lender dated as April 24, 2017 (as amended, modified, restated, consolidated, replaced or supplemented from time to time, the "*Loan Agreement*");

WHEREAS, Lender and Borrower intend these Recitals to be a material part of this Note; and

WHEREAS, Lender and Borrower have agreed, to split and sever, by way of that certain Note Splitter Agreement between Borrower and Lender of even date herewith, the ARC Note into two (2) notes, the first being that certain Promissory Note A1, and the second being this certain Promissory Note A2;

NOW, THEREFORE, in consideration of the premises and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto covenant and agree as follows:

Borrower promises to pay to the order of Lender, without any counterclaim, setoff or deduction whatsoever, on the Maturity Date (as hereinafter defined), at the office of Lender or at such other place as Lender may designate to Borrower in writing from time to time, the principal sum of TWENTY MILLION AND NO/100 DOLLARS ($20,000,000.00), in lawful money of the United States of America with interest thereon to be computed from the date of this Note at the Applicable Interest Rate, and to be paid in accordance with the terms of this Note and that certain Loan Agreement.  All capitalized terms not defined herein shall have the respective meanings set forth in the Loan Agreement.

1.      **Payment Terms.**  Borrower shall pay the Monthly Debt Service Payment Amount to Lender in the manner and at the times specified in Article 2 of the Loan Agreement, which payments shall be applied in the order of priority set forth in said Article 2.  Borrower shall also

pay to Lender interest at the Default Rate, Late Payment Charges, the Yield Maintenance Premium, if any, and all other amounts due and payable as and when provided for in the Loan Agreement. The balance of the Principal, together with all accrued and unpaid interest thereon, and all other amounts payable to Lender hereunder, under the Loan Agreement and under the other Loan Documents shall be due and payable on the Maturity Date.

      **2.**     **Loan Documents.**  This Note is evidence of that certain loan made by Lender to Borrower contemporaneously herewith and is executed pursuant to the terms and conditions of the Loan Agreement.  This Note is secured by and entitled to the benefits of, among other things, the Security Instrument and the other Loan Documents.  Reference is made to the Loan Documents for a description of the nature and extent of the security afforded thereby, the rights of the holder hereof in respect of such security, the terms and conditions upon which this Note is secured and the rights and duties of the holder of this Note.  All of the agreements, conditions, covenants, provisions and stipulations contained in the Loan Agreement and the other Loan Documents are by this reference hereby made part of this Note to the same extent and with the same force and effect as if they were fully set forth in this Note, and Borrower covenants and agrees to keep and perform the same, or cause the same to be kept and performed, in accordance with their terms.

      **3.**     **Loan Acceleration; Prepayment.**  The Debt shall, without notice, become immediately due and payable at the option of Lender upon the happening of any Event of Default.  This Note may not be prepaid except as otherwise expressly provided in, and subject to the terms and conditions, of the Loan Agreement.

      **4.**     **Revival.**  To the extent that Borrower makes a payment or Lender receives any payment or proceeds for Borrower's benefit, which are subsequently invalidated, declared to be fraudulent or preferential, set aside or required to be repaid to a trustee, debtor in possession, receiver, custodian or any other party under the Bankruptcy Code or any other bankruptcy law, common law or equitable cause, then, to such extent, the obligations of Borrower hereunder intended to be satisfied shall be revived and continue as if such payment or proceeds had not been received by Lender.

      **5.**     **Amendments.**  This Note may not be modified, amended, waived, extended, changed, discharged or terminated orally or by any act or failure to act on the part of Borrower or Lender, but only by an agreement in writing signed by the party against whom enforcement of any modification, amendment, waiver, extension, change, discharge or termination is sought. Whenever used, the singular number shall include the plural, the plural the singular, and the words "Lender" and "Borrower" shall include their respective successors, assigns, heirs, executors and administrators.  If Borrower consists of more than one person or party, the obligations and liabilities of each such person or party shall be joint and several.

      **6.**     **Waiver.**  Borrower and all others who may become liable for the payment of all or any part of the Debt do hereby severally waive presentment and demand for payment, notice of dishonor, protest, notice of protest, notice of nonpayment, notice of intent to accelerate the maturity hereof and of acceleration.  No release of any security for the Debt or any Person liable for payment of the Debt, no extension of time for payment of this Note or any installment hereof,

2

and no alteration, amendment or waiver of any provision of the Loan Documents made by agreement between Lender and any other person or party shall release, modify, amend, waive, extend, change, discharge, terminate or affect the liability of Borrower, and any other Person or party who may become liable under the Loan Documents, for the payment of all or any part of the Debt.

7.      **Exculpation.**  It is expressly agreed that recourse against Borrower for failure to perform and observe its obligations contained in this Note shall be limited as and to the extent provided in Section 10.1 of the Loan Agreement.

8.      **Notices.**  All notices or other communications required or permitted to be given pursuant hereto shall be given in the manner specified in the Loan Agreement directed to the parties at their respective addresses as provided therein.

9.      **Governing Law.**   **THIS NOTE SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK (WITHOUT REGARD TO PRINCIPLES OF CONFLICTS OF LAWS EXCEPT THAT IT IS THE INTENT OF BORROWER THAT THE PROVISIONS OF SECTION 5-1401 OF THE GENERAL OBLIGATIONS LAW OF THE STATE OF NEW YORK SHALL APPLY TO THIS NOTE) AND THE APPLICABLE LAWS OF THE UNITED STATES OF AMERICA, WHICH LAWS OF THE UNITED STATES OF AMERICA SHALL, TO THE EXTENT THE SAME PREEMPT SUCH STATE LAWS, GOVERN AND BE CONTROLLING.**

[THE REMAINDER OF THE PAGE IS INTENTIONALLY BLANK]

AmericasActive:9246306.2

IN WITNESS WHEREOF, Borrower has executed this Note as of the date first written above.

BORROWER:

**ACROPOLIS GARDENS REALTY CORP.,**
a New York corporation

By: _____
    Name: Debbie Vazquez
    Title: President